965 So.2d 959 (2007)
STATE of Louisiana, Appellee
v.
Erica M. BOWERS, Appellant.
No. 42,390-KA.
Court of Appeal of Louisiana, Second Circuit.
September 19, 2007.
*961 Louisiana Appellate Project by Annette Roach, Lake Charles, for Appellant.
Paul J. Carmouche, District Attorney, William Jacob Edwards, Dhu Thompson, Tommy J. Johnson, Assistant District Attorneys, for Appellee.
Before WILLIAMS, MOORE and LOLLEY, JJ.
MOORE, J.
Erica M. Bowers was charged by bill of information with manslaughter, La. R.S. 14:31 A(2)(a), and hit-and-run driving, La. R.S. 14:100, arising from an incident at a Kroger grocery store. She elected a bench trial and was found guilty as charged on both counts. The state then charged her as a fourth felony habitual offender; the court adjudicated her as charged and denied her motion for acquittal. The court sentenced her, as a fourth felony offender, to 47 years at hard labor on the manslaughter charge, and to a concurrent five years at hard labor on the hit-and-run. Bowers now appeals her convictions and sentences; we affirm.

Factual Background
On the afternoon of April 23, 2004, Ms. Bowers and an accomplice, Rhonda Mosely, drove to the Kroger on Mansfield Road in Shreveport. Ms. Bowers was carrying a checkbook belonging to a Mr. Monsour, who had reported it as stolen. The car they were driving, a 1982 Chrysler Fifth Avenue, had license plates stolen from another vehicle. Ms. Bowers went into the store while Ms. Mosely waited in the car, which was parked in the middle of the fire lane in front of the main entrance.
Ms. Bowers rolled a shopping cart around the store, loading it up chiefly with baby itemsfour cases of Similac Advance, two packages of Huggiesas well as some T-shirts and a purse, and proceeded to the checkout area. However, the *962 friendly cashier to whom she intended to pass a stolen check was not present, so Ms. Bowers pushed the cart to the pharmacy area and then sauntered out the door.
Seeing this, store manager Rita Small and two other Kroger employees hurried down from the upstairs office and pursued Ms. Bowers as she walked out the door without paying for nearly $270 of merchandise. (The indoor portion of the incident was recorded on the store's video camera.) Ms. Small told Ms. Bowers that she would have to pay for the items she was taking; Ms. Bowers cursed at her and continued down the shallow ramp to the waiting Chrysler; Ms. Small was close behind. Ms. Bowers then told her she was not paying for the things, and pushed the cart back to Ms. Small; it still contained all the items she had taken from the store, as well as Mr. Monsour's checks and a Louisiana ID card belonging to yet another person, but crudely altered to look like Monsour's. Ms. Bowers then opened the driver's door of the Chrysler and started to get in as the car drove forward.
The victim, Daniel "Danny" Maguire, was a 74-year-old Kroger courtesy clerk. He was gathering shopping carts from the lot to return to the store, not involved in the confrontation with Ms. Bowers but unfortunately standing in the path of the Chrysler. The car ran over him, breaking both his legs.
Not surprisingly, many people were nearby and witnessed the incident. Their accounts varied in minor particulars, but all essentially agreed that when Ms. Bowers opened the car door, the other woman, Ms. Mosely, was either sitting behind the wheel or close to it, and Ms. Bowers had to shove her over to get into the driver's seat. Several witnesses saw a "struggle" or "confrontation" for the wheel, and the car started moving before Ms. Bowers had shut the door behind her. Maguire did not see the car coming until it was too late; he was hit almost immediately. Ms. Small and her customer service manager, Brenda Burcham, both testified that the Chrysler first knocked him down, paused, and then ran over him fast with all four wheels. Several witnesses were unsure which woman was driving when all this happened; however, an assistant store manager, Scott Miles, and a customer in the parking lot, Jennifer Scott, told police that it was the woman who had just left the store.
After running over Maguire, Ms. Bowers and Ms. Mosely zigzagged out the parking lot and sped away, but vigilant store patrons Byron and Tami Hazelwood followed them long enough to get the Chrysler's tag number. Police discovered that the license plate had been stolen from another vehicle, a Ford Tempo, but through that car's owner they developed Ms. Bowers as a suspect. Several witnesses identified Ms. Bowers from a photo lineup that was also used to investigate the forgery of Mr. Monsour's at a local Rite Aid drugstore.
Detective Shawn Parker of the Shreveport Police Department located Ms. Bowers in the Harrison County, Texas jail; he and Det. Tim Hunt interviewed her there on April 30. She waived her Miranda rights and gave a recorded statement which was played at trial. She admitted that she had Mr. Monsour's checks without his permission and planned to pass one of them at Kroger; however, the person she expected to be working one of the cashier lanes was not there, so she took the loaded cart out of the store. She insisted that Ms. Mosely was driving the car when it struck Maguire.
After the incident, an ambulance carried Maguire to LSU Medical Center in Shreveport. He had a badly broken left leg that required surgical repair as well as *963 other contusions and abrasions. He died 42 hours after being admitted. The Caddo Parish Coroner, Dr. George McCormick, wrote an autopsy report listing the cause of death as acute myocardial ischemia; Maguire had "cardiomegaly which was consistent with hypertension, resulting in coronary arteriosclerosis." However, Dr. McCormick noted that Maguire's injuries, though not life-threatening, combined with his heart disease to result in acute myocardial ischemia and cardiorespiratory failure; in the death certificate, he listed the manner of death as homicide.

Procedural History and Trial
As noted, the state charged Ms. Bowers with manslaughter, La. R.S. 14:31 A(2)(a), in that she killed Maguire while she was engaged in the perpetration of middle-grade theft of goods, R.S. 14:67.10 B(2), and in the perpetration of forgery, R.S. 14:72,[1] and with hit-and-run driving, La. R.S. 14:100. The bill of information was filed August 5, 2004; just prior to a free and voluntary hearing on September 26, 2005, Ms. Bowers waived her right to a jury trial. Trial began on September 30, 2005, and was continued on six separate days, ending on February 28, 2006.
At trial, Michelle Williams, a deputy coroner, testified that Dr. McCormick, who performed the autopsy on Maguire, died in September 2005, and that she did not personally participate in the autopsy. However, she was the custodian of coroner's records, and the autopsy was a record of the regular business conducted in the office. Over defense objection, the court admitted the autopsy report. A forensic pathologist, Dr. James G. Traylor Jr., testified on the basis of the autopsy and the hospital records that Maguire had a severe degree of natural disease, but the accident and surgery were stressors that exacerbated his underlying condition. He estimated that had Maguire not been run over by Ms. Bowers, there would be "at least an 80- to 90-percent chance that he would still be alive."
The district court found Ms. Bowers guilty as charged of manslaughter and hit-and-run driving, and denied her timely motion for acquittal. The state then charged her as a fourth felony habitual offender, citing her (1) July 1991 guilty plea to middle grade felony theft in Caddo Parish, (2) January 1996 guilty plea to middle grade felony theft in Bossier Parish, and (3) April 1998 guilty plea to forgery in Dallas County, Texas. Ms. Bowers objected to the habitual offender bill, urging that in the first predicate offense, the court failed to inquire into her educational background and determine that she could read, write and understand English; and in the third, the records did not show she received her Boykin rights or was represented by counsel when she pled guilty. At a hearing in August 2006, the state introduced certified records of all three guilty pleas without defense objection. Ms. Bowers argued that the Texas minutes were not a contemporaneous transcript and thus did not satisfy State v. Shelton, 621 So.2d 769 (La.1993). The court commented that at one time, a guilty plea from another state could not serve as a predicate offense without a transcript of the Boykin colloquy but she was bound to follow recent jurisprudence under Shelton. The court found Ms. Bowers a fourth felony offender and sentenced her to 47 years at hard labor, without benefits, to run concurrently with any other sentence. On the hit-and-run conviction, the court sentenced her to five years at hard labor. Ms. Bowers has appealed her convictions *964 and sentences, raising six assignments of error.

Discussion

(1) Sufficiency of the Evidence as to Manslaughter
By her first assignment of error, Ms. Bowers urges the evidence was insufficient to sustain the conviction of manslaughter. The felony murder statute under which she was charged, La. R.S. 14:31 A(2)(a), requires proof that the offender performed the act of killing "while simultaneously engaged in the perpetration of an unenumerated felony." State v. Myers, 99-1849 (La.4/11/00), 760 So.2d 310. Specifically, she performed none of the acts listed in R.S. 14:67.10 from which an intent to permanently deprive may be inferred: she did not conceal the goods, transfer, alter or remove any price tags, place any item inside another container (except for two $9.99 T-shirts), or damage any goods. Further, because she returned the loaded shopping cart when confronted by the store manager, there was no actual theft, but at most an attempted theft, which is not a felony. State v. Behre, 03-896 (La. App. 5 Cir. 12/9/03), 864 So.2d 668; State v. Bridgewater, 01-507 (La.App. 5 Cir. 10/17/01), 800 So.2d 964; State v. Effit, 467 So.2d 856 (La.App. 2 Cir.1985). Finally, even if the state proved an underlying felony, it failed to prove a "causal relation between the defendant's conduct and the harm for which the prosecutor seeks to impose criminal sanctions." State v. Kalathakis, 563 So.2d 228 (La.1990). She submits that forgery and theft of goods are nonviolent crimes, relatively minor felonies not normally associated with homicide; the injuries to Maguire were remote and indirect consequences of a shoplifting which no reasonable person could have foreseen.[2]
The state responds that based on the fact that Ms. Bowers placed merchandise in a grocery cart and exited the store with the cart, a rational fact finder could infer that she intended to deprive Kroger of the goods permanently, thus proving this element of theft of goods. State v. Williams, 05-59 (La.App. 5 Cir. 5/31/05), 904 So.2d 830; State v. Weidenbacker, 00-931 (La. App. 5 Cir. 1/23/01), 782 So.2d 1040. Moreover, legal cause in a criminal case requires proof only that the defendant's act was a "substantial factor in bringing about the forbidden result." State v. Kalathakis, supra. The state submits that running over Maguire was a substantial factor in causing his death. State v. Gourdine, 41,469 (La.App. 2 Cir. 12/13/06), 946 So.2d 277.
The constitutional standard of appellate review for sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, XXXX-XXXX (La.5/20/03), 851 So.2d 921. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.2/22/06), 922 So.2d 517. It is not the function of a reviewing court to assess credibility or reweigh evidence. State v. Marcantel, XXXX-XXXX (La.4/3/02), 815 So.2d 50.
*965 As it pertains to this case, manslaughter is defined as a homicide committed without any intent to cause death or great bodily harm, when the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in La. R.S. 14:30 or 14:30.1, or of any intentional misdemeanor directly affecting the person. La. R.S. 14:31 A(2)(a). The state relied on middle grade theft of goods as the unenumerated felony. At the time of the offense, theft of goods was defined as follows:
A. Theft of goods is the misappropriation or taking of anything of value which is held for sale by a merchant, either without the consent of the merchant to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the merchant permanently of whatever may be the subject of the misappropriation or taking is essential and may be inferred when a person:
(1) Intentionally conceals, on his person or otherwise, goods held for sale.
(2) Alters or transfers any price marking reflecting the actual retail price of the goods.
(3) Transfers goods from one container or package to another or places goods in any container, package, or wrapping in a manner to avoid detection.
(4) Willfully causes the cash register or other sales recording device to reflect less than the actual retail price of the goods.
(5) Removes any price marking with the intent to deceive the merchant as to the actual retail price of the goods.
(6) Damages or consumes goods or property so as to render it unmerchantable.
B. * * * (2) When the misappropriation or taking amounts to a value of one hundred dollars or more, but less than a value of five hundred dollars, the offender shall be imprisoned, with or without hard labor, for not more than two years or may be fined not more than two thousand dollars, or both.[3]
Contrary to Ms. Bowers's claim, the evidence is sufficient to prove an intent to permanently deprive Kroger of the merchandise. In State v. Victor, 368 So.2d 711 (La.1979), the court held, "A theft occurs when the thing is taken, although it may remain in the possession of the thief for only seconds." Quoting from preliminary drafts of the Louisiana Criminal Code, the court elaborated:
The concept of appropriation serves to differentiate completed property offenses from attempts. This is a difficult problem because all theft partakes of the character of attempt. The thief proposes to make the property his own more or less permanently; but he is nonetheless a thief if, shortly after he exerts his dominion over the property of another, he is prevented from making off with it.

368 So.2d at 714 (emphasis added).
In State v. Ellis, 24,827 (La.App. 2 Cir. 5/5/93), 618 So.2d 616, the defendant contended she was guilty of only attempted felony theft because after she left the store and walked 10 feet into the mall with stolen clothing concealed in her purse, she reentered the store and threw the clothing beneath a rack where other clothing was displayed. We disagreed:
One who takes the property of another, intending at the time of the taking to permanently deprive the owner of that property, is nonetheless guilty of the *966 crime of theft though she later, becoming frightened or having a change of heart, decides to return it and does so. 618 So.2d at 617-618 (emphasis in original).
As in Ellis, the only reason Ms. Bowers returned the merchandise was that her theft had been detected and she was being pursued by several Kroger employees. The court was entitled to find the completed offense of theft of goods. The state correctly notes that in State v. Behre and State v. Bridgewater, supra, the perpetrators had not left the stores when they were apprehended. In State v. Effit, supra, we deferred to the trial court's verdict of attempted theft despite our own finding that the defendant intended to permanently deprive. On the instant facts, we will again defer to the district court's finding of a completed offense.
We are equally unpersuaded by Ms. Bowers's contention that the state failed to prove causation. In State v. Matthews, 450 So.2d 644 (La.1984), the supreme court held that it is not essential for the state to prove that the defendant's action was the sole cause of death; it is sufficient if her conduct hastened the termination of life, or contributed, mediately or immediately, to the death, in a degree sufficient to be clearly a contributing cause. Subsequent cases have confirmed the "substantial factor" standard. State v. Kalathakis, supra; State v. Myers, supra; State v. Gourdine, supra. Dr. Traylor, the forensic pathologist, confirmed that Maguire had advanced cardiovascular disease, but that without the trauma of being run over by a car, with the resultant injury, pain and major surgery to his femur, he had an 80-90% chance of surviving until the date of trial. There was no evidence to contradict Dr. Traylor's assessment. On this record, the district court was entitled to find Ms. Bowers's conduct a substantial factor in causing Maguire's death. This assignment of error lacks merit.

(2) Sufficiency of the Evidence as to Hit-and-Run Driving
By her second assignment of error, Ms. Bowers urges the evidence was insufficient to sustain the conviction of hit-and-run driving. The statute, R.S. 14:100, clearly requires that the defendant be driving the vehicle at the time it is involved in the accident, but most of the witnesses could not say to a certainty that she was the driver. Citing State v. Nelson, 612 So.2d 837 (La.App. 1 Cir.1992), writ denied, 616 So.2d 700 (1993), she concludes that the state's evidence did not exclude the reasonable hypothesis of innocence that Ms. Mosely was driving the car.
The state responds that viewed in the light most favorable to the prosecution, the evidence supports the finding that Ms. Bowers had control of the car when it struck Maguire. It adds that in order to have control of a car, the defendant need only exercise some control or manipulation over it. State v. Rossi, 98-1253 (La.App. 5 Cir. 4/14/99), 734 So.2d 102, writ denied, 99-0605 (La.4/23/99), 742 So.2d 886.
The trier of fact is charged to make a credibility evaluation and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Sosa, XXXX-XXXX (La.1/19/06), 921 So.2d 94. The trier of fact may therefore accept or reject, in whole or in part, the testimony of any witness. State v. Updite, 38,423 (La.App. 2 Cir. 6/23/04), 877 So.2d 216, writ denied, XXXX-XXXX (La.11/24/04), 888 So.2d 229.
*967 Ms. Bowers correctly shows that according to most witnesses, she was not entirely inside the car when it started moving, and several could not positively state that Ms. Bowers, not Ms. Mosely, was holding the steering wheel when Maguire was struck. However, all witnesses agreed that Ms. Bowers was struggling to take the wheel; other than Ms. Bowers's own statement to detectives, nobody testified that she was uninvolved in the events that led to the accident. Even if she did not take full control of the steering wheel and accelerator, a rational fact finder could conclude that her conduct was a significant factor in causing the car to run over Maguire.
We note parenthetically that State v. Nelson, cited in brief, was a DWI case which "rested purely on circumstantial evidence." The court invoked La. R.S. 15:438, the circumstantial evidence rule, under which such evidence "must exclude every reasonable hypothesis of innocence." The instant case, by diametrical contrast, involved direct evidence: the testimony of at least eight eyewitnesses that Ms. Bowers struggled to take control of the car to elude Kroger employees. There is no application of R.S. 15:438 here. This assignment of error lacks merit.

(3) Admission of Autopsy Report and Expert Testimony
By her third assignment of error, Ms. Bowers urges the district court erred in admitting into evidence the autopsy report allegedly written by Dr. McCormick. She concedes that a coroner's report is competent evidence of death and the cause of death, La. C. Cr. P. art. 105, and that Dr. McCormick died on September 20, 2005, a few days before trial began, thus making it admissible hearsay. This, however, compromised her right of confrontation by prohibiting cross-examination of the author of the report. State v. Berry, 324 So.2d 822 (La.1975), cert. denied, 425 U.S. 954, 96 S.Ct. 1731, 48 L.Ed.2d 198 (1976); State v. Leonard, XXXX-XXXX (La.App. 1 Cir. 4/27/05), 915 So.2d 829, rev'd on other grounds, XXXX-XXXX (La.6/16/06), 932 So.2d 660. She was entitled to disprove that the coroner "had no strong motive to misrepresent, and in all probability the report of the results of the examination was trustworthy." State v. Prestridge, 399 So.2d 564 (La.1981). Factually, shortly after Dr. McCormick's death, the Caddo Parish District Attorney began an investigation into his public and private offices, uncovering allegations of irregularities (e.g., that lab assistants performed the bulk of the examinations without Dr. McCormick even being present, a secretary wrote autopsy reports from card notes, and an assistant routinely forged his name and drafted "dummy" death certificates to meet deadlines) that were disclosed in discovery responses in the instant case. Against this backdrop, Ms. Bowers questions whether the autopsy report is trustworthy. Further, she argues that because it was based on the tainted autopsy report, Dr. Traylor's testimony was not reliable and should have been excluded. In the alternative, if trial counsel failed to object to any of this evidence, she is entitled to a finding of ineffective assistance of counsel.
The state responds that the autopsy report was a permanent record of the coroner's office prepared in connection with ordinary duties of the coroner; this coroner's report is expressly admissible under the comments to La. C. Cr. P. art. 105.[4] The coroner's report was essentially non-testimonial hearsay as it only provided descriptions of findings, and thus admissible. *968 State v. Anderson, 41,489 (La.App. 2 Cir. 11/1/06), 942 So.2d 625, and citations therein. Ms. Bowers did not introduce into evidence any of the discovery matters concerning alleged irregularities in Dr. McCormick's offices, and thus these factual contentions are not properly before the court. Finally, claims of ineffective assistance of counsel are normally relegated to post conviction relief, not direct appeal. State v. Seiss, 428 So.2d 444 (1983); State v. Green, 27,652 (La.App. 2 Cir. 1/24/96), 666 So.2d 1302, writ denied, 97-0504 (La.10/31/97), 703 So.2d 14.
A coroner's report is competent evidence of death and the cause of death. La. C. Cr. P. art. 105. It is excepted from the hearsay rule and is admitted in evidence as proof of death and the cause thereof. State v. Kelly, 375 So.2d 1344 (La.1979); State v. Garner, 39,731 (La. App. 2 Cir. 9/8/05), 913 So.2d 874, writ denied, 2005-2567 (La.5/26/06), 930 So.2d 19. This court discussed a Sixth Amendment argument very similar to Ms. Bowers's in the recent case of State v. Anderson, supra:
The defendant also contends that he was deprived of his confrontation rights under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The threshold question under Crawford is whether the autopsy report was testimonial or nontestimonial in nature. In State v. Leonard [supra], that court found that the narrowly drawn La. C. Cr. P. art. 105 rendered the coroner's report as nontestimonial hearsay and thus admissible under Crawford because it was admissible only for the purpose of proving death and cause of death. Courts in other states have found that autopsy reports are generally nontestimonial under Crawford. * * *
According to the autopsy report, the victim's cause of death was "multiple gunshot wounds." The "narrative of findings" recounted that his death was due to "multiple penetrating and perforating, indeterminate range gunshot wounds, resulting in laceration of vital organs and blood loss." The report then detailed 12 gunshot wounds, two of which were to the head, three to the chest, six to the abdomen, and one to the arm. The autopsy report describes the location of the wounds, the injuries inflicted by each wound, the path of the bullet, and whether a projectile was recovered. The information in the autopsy report was routine, descriptive, and nonanalytical; i.e., it was nontestimonial in nature and thus did not trigger the Crawford mandate for cross-examination pursuant to the Confrontation Clause.
State v. Anderson, supra at pp. 5-6, 942 So.2d at 628-629 (citations omitted).
On close review, we find the instant coroner's report to be similar in nature. It primarily describes Maguire's injuries and the condition of his cardiovascular system. It identified the cause of death, acute myocardial ischemia, completely in accord with Art. 105. As in Anderson, we find this nontestimonial. There was no denial of confrontation.
Admittedly, the "narrative of findings" is not completely descriptive: it erroneously states that Maguire was killed "while chasing a shoplifter." However, any error in admitting this testimonial statement was harmless beyond a reasonable doubt given the numerous witnesses to the event, all of whom portrayed Maguire as an uninvolved bystander. Moreover, defense counsel thoroughly cross-examined Dr. Traylor, emphasizing the fairly advanced state of Maguire's preexisting illness and the probability that the auto accident contributed to his death. On this *969 record we perceive no denial of confrontation rights. This argument lacks merit.
Ms. Bowers's alternative claim of ineffective assistance is better raised by application for post conviction relief, where under La. C. Cr. P. art. 930 a full evidentiary hearing may be held. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Williams, 33,581 (La. App. 2 Cir. 6/21/00), 764 So.2d 1164. The instant record is not sufficient to support or refute the claim. Trial counsel objected to the coroner's report on grounds of hearsay and denial of confrontation, and he extensively cross-examined Dr. Traylor; however, when questioning the deputy coroner, Ms. Williams, he did not explore the allegations of misconduct so graphically depicted by appellate counsel in brief. On this record, we will defer the claim of ineffective assistance to post conviction relief.

(4) Denial of Fair and Speedy Trial
By her fourth assignment, Ms. Bowers urges her constitutional rights were violated "by the manner in which her trial was conducted, including the fact this bench trial was conducted over a five-month period while the same judge simultaneously tried a codefendant charged in a separate bill of information with manslaughter from the same incident." She contends she was prejudiced by the long delays between trial dates: the presentation of the evidence was disjointed, certain exhibits were given duplicate numbers, and the state was allowed to rest with the option to reopen its case for "housecleaning." In the alternative, trial counsel was ineffective for failing to object to these procedures.
The state responds that the grant or denial of a recess is largely within the discretion of the trial court. State v. Sharp, 321 So.2d 331 (La.1975). Further, none of Bowers's complaints prejudiced her case.
Where the law is silent, the court has the inherent authority to fashion a remedy which will promote the orderly administration of justice. La. C. Cr. P. art. 17; State v. Mims, 329 So.2d 686 (La.1976). The judge hearing the instant trial was simultaneously hearing the trial of the codefendant, Ms. Mosely. Ms. Bowers's trial began on September 30, 2005, and was continued on November 14 and December 19, 2005, and January 30, and February 6, 24 and 28, 2006. The main explanation in the record for the widely spaced trial dates was that the judge was unavailable for other dates. While this procedure seems unusual, it does not strike us as an abuse of discretion. Notably, this was a bench trial, so inconvenience to the jury was not an issue, and any disruption in the flow of the evidence would seem more likely to prejudice the state than the defense. Also, trial counsel did not object to the progress of trial. On this record, we find no prejudice, and this assignment of error lacks merit.
The claim of ineffective assistance of counsel is deferred to post conviction relief for the reasons already discussed.

(5) Habitual Offender Adjudication
By her fifth assignment, Ms. Bowers urges that two of the predicate offenses used to prove her fourth felony status were deficient. First, the minutes of the July 1991 guilty plea in Caddo Parish merely recite that she was advised of her Boykin rights but do not show that the court explained these to her or ascertained her level of comprehension. Next, the minutes of the April 1998 guilty plea in Dallas County are "generic" in nature, do not specifically refer to her by name, docket number or charge, and do not show that she was represented by counsel. She contends she affirmatively showed "an infringement *970 of [her] rights or a procedural irregularity" under State v. Shelton, supra, thus shifting the burden to the state to prove the validity of the predicate conviction by producing a "perfect" transcript. She concludes that the state failed to meet its burden of proving, beyond a reasonable doubt, the constitutionality of these two predicates. State v. Longo, 560 So.2d 530 (La.App. 1 Cir.1990).
The state responds that although Ms. Bowers filed a pretrial objection to the multiple bill, at the hearing she did not object to the introduction of these exhibits. Further, both filings show that Ms. Bowers was represented by counsel and received advice of her Boykin rights, thus proving the predicate offenses.
If the defendant denies the allegations of the bill of information charging her as a multiple offender, La. R.S. 15:529.1, the burden is on the state to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. State v. Shelton, supra. Once the state carries this initial burden, the burden of production shifts to the defendant "to produce some affirmative evidence showing an infringement of [her] rights or a procedural irregularity in the taking of the plea." Id.; State v. Madison, XXXX-XXXX (La.8/31/00), 768 So.2d 593. If she does so, the burden returns to the state to prove the validity of the predicate; this may be done with a "perfect" transcript, but a "perfect" transcript is not required. State v. Shelton, supra; State v. Townsend, XXXX-XXXX (La.4/23/04), 874 So.2d 152. The court must weigh the evidence to determine whether the state has met its burden of proving the prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. Id.; State v. Zachary, XXXX-XXXX (La.10/25/02), 829 So.2d 405.
Based on our examination of the record, we need not address the state's contention that Ms. Bowers failed to object to the evidence of her prior felony convictions. The state introduced a "perfect" transcript of the January 1994 guilty plea in Caddo Parish. This showed that Ms. Bowers was represented by counsel, the court advised her of her Boykin rights, and counsel explained the plea to her. We perceive no infringement of rights or other irregularity that would warrant quashing this predicate offense.
The state introduced court minutes of the April 1998 guilty plea in Dallas County; these contain the standard recitation of rights, and approach the computer-generated "fill-in-the-blank" form disallowed in State v. Longo, supra. However, the state also offered documents entitled "Plea Bargain Agreement," setting out the agreed sentence in detail and signed by Ms. Bowers, her counsel and the prosecutor, and "Waiver of Jury, Felony Plea of Guilty," setting out the Boykin rights in extenso and signed by Ms. Bowers three times, as well as by her counsel, the prosecutor and the judge. These signed forms cure any weakness in the court minutes. We perceive no infringement of rights or any irregularity that would warrant quashing this predicate offense. This assignment of error lacks merit.

(6) Excessive Sentence
By her final assignment of error, Ms. Bowers urges her 47-year sentence is unduly harsh and serves no legitimate purpose. She suggests that Maguire's death resulted from the "hasty, clumsy escape and the confusion brought about" when she tried to get into the car, and there was no premeditation. She concedes several prior felonies, but most of these were nonviolent theft or forgery charges. Without *971 elaboration, she argues that a deviation below the statutory minimum would be warranted.
The state responds that Ms. Bowers had an extensive criminal history and was on bond for a charge of armed robbery when the instant offense occurred; at sentencing, the trial judge commented that Ms. Bowers ultimately received 30 years on the armed robbery charge. The state also argues that a lesser sentence would deprecate Maguire's death.
Appellate review of sentences for excessiveness is a two-pronged inquiry. First, the record must show that the sentencing court complied with La. C. Cr. P. art. 894.1. Ms. Bowers does not allege any specific errors in the court's recitation of the factors; although compliance was minimal, it established an adequate factual basis for sentence. State v. Smith, 433 So.2d 688 (La.1983); State v. Quiambao, 36,587 (La.App. 2 Cir. 12/11/02), 833 So.2d 1103, writ denied, XXXX-XXXX (La.5/16/03), 843 So.2d 1130.
The second prong is constitutional excessiveness. A sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a needless and purposeless infliction of pain and suffering. State v. Dorthey, 92-3120 (La.9/10/93), 623 So.2d 1276. A sentence is deemed grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice or makes no reasonable contribution to acceptable penal goals. State v. Guzman, 99-1753 (La.5/16/00), 769 So.2d 1158.
As a fourth felony offender, Ms. Bowers faced a sentence of 40 years to life at hard labor and without benefits. La. R.S. 15:529.1 A(1)(c)(i). Her criminal record is genuinely remarkable, in the most pejorative sense; starting in 1991, she has logged 22 charges for various grades of theft, leading to 13 different pleas and adjudications. She has been on probation of some sort almost continuously since 1991. Her record is not free of violence: she has arrests for resisting an officer and battery of an officer, and at the time of sentencing had a pending charge of illegal use of a weapon. She was arrested in Bossier Parish in March 2003 for armed robbery, and was out on bond for that charge when the instant offense occurred. In 2004, she was convicted on the armed robbery charge and sentenced to 30 years at hard labor without benefits. Her record is of a life suffused with theft and dishonesty, recently spiraling toward violence, culminating in the senseless death of an innocent man. The sentence neither shocks our sense of justice nor frustrates acceptable penal goals. This assignment of error lacks merit.

Conclusion
We have reviewed the entire record and find nothing we consider to be error patent. For the reasons expressed, we affirm Erica M. Bowers's convictions, multiple offender adjudication and sentences.
AFFIRMED.
NOTES
[1] In its opening statement, the state conceded that Ms. Bowers abandoned her intended forgery when she could not find a particular cashier.
[2] She also contends that the court erred in finding that she, and not her accomplice Ms. Mosely, was driving the car when it struck Maguire, but we will address this argument in the second assignment of error.
[3] Pursuant to a 2006 amendment, the range for middle grade theft of goods is now a value of $300 or more, but less than a value of $500. La. Acts 2006, No. 143, § 1.
[4] "Since the word `coroner' is defined in Art. 8 to include deputies and assistants, it is unnecessary for this article to state expressly that the reports and findings of the coroner's assistants are admissible in evidence." La. C. Cr. P. art. 105, Official Revision Comment (e).