STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-717

STATE OF LOUISIANA

VERSUS

ALBERT ABSHIRE

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2017-201721
HONORABLE WILLIAM J. BENNETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

PHYLLIS M. KEATY
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Phyllis M. Keaty, and John E. Conery, Judges.

AFFIRMED.

Charles A. Riddle, III
District Attorney
Post Office Box 1200
Marksville, Louisiana 71351
(318) 253-6587
Counsel for Appellee:
    State of Louisiana

**Anthony F. Salario**
**Assistant District Attorney**
**Post Office Box 503**
**Marksville, Louisiana  71351**
**(318) 240-7123**
**Counsel for Appellee:**
     **State of Louisiana**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**Post Office Box 1747**
**Lake Charles, Louisiana  70602-1747**
**(337) 436-2900**
**Counsel for Defendant/Appellant:**
     **Albert Abshire**

**KEATY, Judge.**

On July 25, 2017, Defendant, Albert Abshire, was charged by bill of information with hit-and-run driving, a violation of La.R.S. 14:100. On November 13, 2017, Defendant withdrew his initial plea of not guilty and entered a plea of guilty to the charged offense. The trial court ordered a pre-sentence investigation report (PSI), which was filed into the record at the December 14, 2017 sentencing hearing. The trial court sentenced Defendant in open court to ten years of imprisonment at hard labor under the provisions of La.R.S. 14:100(C)(2). Defendant timely filed a motion to reconsider sentence. The trial court denied the motion and set a hearing for Defendant to proffer the evidence he would have offered in support of the motion to reconsider.

Defendant now appeals his sentence, alleging that: (1) the sentence imposed "is nothing more than cruel and unusual punishment and, thus, excessive" under U.S. Const. amend. VIII and La.Const. art. 1, § 20; and (2) the trial court "erred in making improper and unsubstantiated assumptions in arriving at the proper sentence" and in giving "undue weight and consideration to Appellant's prior record of arrests," in violation of the Due Process Clause of U.S. Const. amend. V.

## FACTS

Defendant's appellant brief contains the following facts which the trial court recited at the sentencing hearing:

> The evidence is undisputed that on April 29, 2017 Steven Lee was struck by a vehicle operated by Albert Abshire. Steven Lee died as a result of the impact from the vehicle. The evidence is further clear that Albert Abshire knew that he had hit something, whether an individual or something else, stopped his vehicle and noticed the damage; but did not return to the scene. Instead of returning to the scene and giving his identity and attempting to render aid, Abshire drove to his home in Rapides Parish, more than thirty (30) miles away, and attempted to hide his vehicle. The evidence is clear that Abshire was leaving the Paragon Casino at the time that the accident occurred. When contacted by the police Abshire admitted that he "hit something

leaving the casino," but claimed that he did not know what he hit. Evidence has been submitted confirming that Abshire stopped at the Chevron Station and looked at the damage to his vehicle, which damage was serious, however, Abshire did not return to the scene and instead drove home.

The PSI contained additional information which is pertinent to this appeal. A woman who witnessed an accident near the Paragon Casino in Avoyelles Parish called 911 to request an ambulance. That woman told a detective from the Marksville Police Department (the MPD) that she saw the victim step into the road from a sidewalk where he was struck by an older model white Chevrolet pickup truck being driven by a white male. According to the woman, the victim was thrown into the air and parts of the truck fell onto the roadway, but the driver of the truck did not stop.

After receiving a phone call indicating that Abshire may have been involved in the accident, Major Eric Jacobs with the MPD reviewed video surveillance from the casino that showed a white truck leaving the casino in the direction of the accident around the time of the accident. The license plate belonged to Abshire. Officers went to Abshire's home where they found a white truck in a locked shed that appeared to be in the process of being repaired. After being fully advised of his *Miranda*[1] rights, Abshire admitted to knowing that he "hit something," but he did not go back to see what had been struck with his vehicle. Based on that information, Abshire was arrested.

Approximately four days after the accident, a second woman advised the MPD that when she was at a Chevron station on the night of April 28, 2017, she saw a white male inspecting damage to the passenger side of a white Chevrolet or GMC truck. She recognized Abshire's picture as the man she saw at the gas station.

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966).

2

*Assignment of Error Number Two*

In his second assignment of error, Defendant argues that he should be resentenced because the "trial court erred in making improper and unsubstantiated assumptions in arriving at the proper sentence to impose" and in giving "undue weight and consideration to [his] prior record of arrests," in violation of his right to due process. We will discuss this assigned error first, because, if it has merit, Defendant's sentence will be vacated, and this case will be remanded to the trial court for resentencing, thus making Defendant's remaining assigned error moot.

In his motion to reconsider sentence, Defendant asserted that his sentence was "excessive, especially for the following reasons:"

1.  The lack of a felony conviction;

2.  The victim of the defendant's criminal conduct induced or facilitated its commission;

3.  The defendant has at least partially compensated the victim of his criminal conduct for the damage or injury he sustained;

4.  The defendant had no knowledge that he struck a person when he was driving in his lane of travel at night.

The evidence proffered at the hearing on Defendant's motion to reconsider sentence consisted of brief argument by defense counsel and a brief statement by Defendant. Our examination of that evidence reveals that the arguments presented were limited to the grounds asserted in Defendant's motion to reconsider.

In contrast, Defendant now argues on appeal that the trial court made assumptions based on Defendant's "incomplete arrest record." More specifically, Defendant claims that the trial court improperly assumed that Defendant "had received help from someone in making the charges go away." Defendant further posits that the trial court considered Defendant's "unadjudicated criminal conduct at

face value without being provided a full factual basis for the conduct from which the judge could closely evaluate and carefully examine the weight of the evidence."

Under La.Code Crim.P. art. 881.1(E), the failure to make or timely file a motion to reconsider sentence or to include a specific ground for reconsideration precludes a defendant from raising an objection to the sentence or urging any ground not raised in the motion on appeal. *See State v. Barling,* 00-1241, 00-1591 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, w*rit denied*, 01-838 (La. 2/1/02), 808 So.2d 331. In *State v. Mims*, 619 So.2d 1059, 1059-60 (La.1993), the supreme court explained:

> If the defendant does not allege any specific ground for excessiveness or present any argument or evidence not previously considered by the court at original sentencing, then the defendant does not lose the right to appeal the sentence; the defendant is simply relegated to having the appellate court consider the bare claim of excessiveness. Article 881.1 only precludes the defendant from presenting arguments to the court of appeal which were not presented to the trial court at a point in the proceedings when the trial court was in a position to correct the deficiency.

Given Defendant's failure to raise, in either his motion to reconsider or in the proffer he offered at the hearing on that motion, the issue of whether the trial court made improper and unsubstantiated assumptions in fashioning Defendant's sentence, we conclude that Defendant is barred from making those arguments on appeal. Nevertheless, we will consider Defendant's claim that his ten-year sentence is excessive in our discussion of his first assigned error.

### Assignment of Error Number One

Defendant asserts that his ten-year sentence, which is the maximum penalty under La.R.S. 14:100(C)(2), is excessive as it amounts to "nothing more than cruel and unusual punishment." As previously noted, the failure to "include a specific ground upon which a motion to reconsider sentence may be based, . . . shall preclude [] the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal." La.Code Crim.P. art. 881.1(E); *see also Barling*,

4

779 So.2d 1035. Accordingly, we will only review the issues raised in Defendants' appeal that can reasonably be viewed as being encompassed in his motion to reconsider sentence.

Both the United States and Louisiana constitutions guarantee that no person shall be subject to cruel and unusual punishment. U.S. Const. amend. VIII; La. Const. art. I, § 20. A sentence is excessive when a reviewing court finds that the penalty is "so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering." *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331. The trial court has broad sentencing discretion, and a sentence within statutory limits will not be set aside absent a manifest abuse of that discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99), 746 So.2d 124, *writ denied*, 00-165 (La.6/30/00), 765 So.2d 1067. However, sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979).

In reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La.6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La.5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, 958.

*State v. Soileau*, 13-772, pp. 3-4 (La.App. 3 Cir. 2/12/14), 153 So.3d 1008, 1011, *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261.

Louisiana Revised Statutes 14:100, the "Hit–and–Run driving," statute, sets out multiple penalty ranges based upon the facts and circumstances surrounding the offense.  It provides:

C. (1)(a) Whoever commits the crime of hit-and-run driving where there is no death or serious bodily injury shall be fined not more than five hundred dollars or imprisoned for not more than six months, or both.

(b) Whoever commits the crime of hit-and-run driving where there is no death or serious bodily injury shall be fined not more than five hundred dollars, imprisoned for not less than ten days nor more than six months, or both when:  (i) there is evidence that the vehicle operator consumed alcohol or used drugs or a controlled dangerous substance prior to the accident; (ii) the consumption of the alcohol, drugs, or a controlled dangerous substance contributed to the accident; and (iii) the driver failed to stop, give his identity, or render aid with the knowledge that his actions could affect an actual or potential present, past, or future criminal investigation or proceeding.

(2) Whoever commits the crime of hit-and-run driving, when death or serious bodily injury is a direct result of the accident and when the driver knew or should have known that death or serious bodily injury has occurred, shall be fined not more than five thousand dollars or imprisoned with or without hard labor for not more than ten years, or both.

(3) Whoever commits the crime of hit-and-run driving where all of the following conditions are met shall be imprisoned, with or without hard labor, for not less than five years nor more than twenty years:

(a) Death or serious bodily injury is a direct result of the accident.

(b) The driver knew or must have known that the vehicle he was operating was involved in an accident or that his operation of the vehicle was the direct cause of an accident.

(c) The driver had been previously convicted of any of the following:

(i) A violation of R.S. 14:98, or a law or an ordinance of any state or political subdivision prohibiting operation of any vehicle or means of transportation or conveyance while intoxicated, impaired, or while under the influence of alcohol, drugs, or any controlled dangerous substance on two or more occasions within ten years of this offense.

(ii) A violation of R.S. 14:32.1-vehicular homicide.

(iii) A violation of R.S. 14:39.1-vehicular negligent injuring.

6

(iv) A violation of R.S. 14:39.2-first degree vehicular negligent injuring.

At the sentencing hearing, the trial court stated the following before imposing Defendant's sentence:

It is interesting to note that pursuant to R.S. 14:100C(3) a potential sentence of not less than five (5) years nor more than twenty (20) years is applicable when three (3) factors exist, those being that death or serious bodily injury is a direct result of the accident which occurred here; the driver knew or must have known that the vehicle he was operating was involved in an accident or that his operation of the vehicle was the direct cause of an accident which occurred here; and that the driver had been previously convicted of a violation of R.S. 14:98, that being DWI or certain other potential violations. However, in this case the Bill of Information did not so charge because the last DWI conviction was more than ten years ago.

However it was [] very close, it wasn't that far off. In preparation for this sentencing Mr. Abshire, this Court has reviewed the entire record of this proceeding, including the description of the incident that you gave during the Boykin Examination. I've reviewed the Pre-Sentence Investigation Report, a letter from the family of the victim; and this Court has performed an independent review of applicable law and jurisprudence.

. . . .

. . . The evidence submitted in the Pre-Sentence Investigation Report confirms that Abshire is a skilled mechanic and auto body repair man having been self-employed for thirty-five (35) years. It is also interesting to note that when the police appeared at his home, the truck was located in a locked shed and appeared as though it was in the process of being repaired. This information was provided by Officer Brent Bordelon with the Alexandria Police Department.

Evidence has been submitted that since the date of the event, Abshire has not contacted the family and/or expressed any remorse. However, in his statement to the Department of Probation and Parole for the Pre-Sentence Investigation Report, Abshire stated, "I didn't know I hit anybody. My biggest mistake was I should have went back when I realized I hit something. I never would have dreamed I hit someone. Nobody prays for him more than I do. I would give anything in the world to change it, but I can't change it. I replay it over and over to try to figure out what happened. []If given a prison sentence, would the Court consider work release so that I can send my mother some money."

7

It is also interesting to note that all parties involved in the Criminal Justice System, that being the Office of the District Attorney, the Sheriff's Office, and the Marksville Police Department believe that Abshire should be incarcerated, with most indicating that the incarceration should be for the maximum sentence. This request has also been made by the family of the victim. Knowing that maximum sentences are reserved for the worst offenders, this Court performed additional research in an effort to ascertain whether or not Abshire deserves a maximum sentence. Abshire certainly deserves a sentence of imprisonment.

In reviewing the criminal history of Albert Abshire attached to the Department of Probation and Parole Pre-Sentence Investigation Report, there are thirty (39) [sic] entries in the criminal history between the dates of 1985 and 2017. Five (5) of these entries are arrest for Driving While Intoxicated, two (2) in 1988, two (2) in 1998 and one (1) in 2008. Abshire pled guilty to DWI on three (3) separate occasions, once in 1988 and twice in 1998, however, all were treated as Misdemeanors. The other two DWI arrests reflect no disposition indicating that they simply went away. In fact, of the thirty-nine (39) entries[,] ten (10) reflect no disposition available and eleven (11) were dismissed. In other words, twenty-one (21) of the thirty-nine (39) entries indicate that no action was taken. This indicates to this Court that Abshire has some sort of influence somewhere.

The criminal history further reflects that Abshire was convicted in Los Angeles, California in 1996 of the crime of Infliction of Corporal Injury on Spouse or Co-Habitant and received a suspended sentence. Seven (7) other charges in California that came about at that time were dismissed.

Abshire also pled guilty in the Ninth Judicial District Court, Parish of Rapides, in 1999 to Criminal Damage to Property; was charged with a felony of Attempted Unauthorized Entry of an Inhabited Dwelling in 2012 but this was reduced to the misdemeanor offense of trespass where he pled guilty in October of 2013. Some of the charges dismissed were for allegations of Simple Assault; Telephone Harassment; Unauthorized Entry, which was reduced to Trespass; violation of Protective Order; Criminal Damage to Property; Remaining After Being Forbidden; and a few traffic offenses.

Presently pending against Abshire are charges of Disturbing the Peace by Intoxication and two (2) counts of Aggravated Assault with Trial scheduled in Rapides Parish on January 22, 2018; and also charges of Disturbing the Peace, Telephone Harassment, and Violation of a Protective Order scheduled for arraignment on January 22, 2018. Therefore, Abshire has a very substantial criminal history.

Also, the records of the Rapides Parish Clerk of Court Civil Department reflect several instances wherein women have filed and received Protective Orders with the most recent apparently being

requested by a friend of Abshire's significant other with some very disturbing allegations. These filings - - - along with the mention of violation of Protective Orders against Abshire in his criminal history - - - clearly reflect a violent tendency.

In further preparation for this sentencing, this Court has reviewed the Sentencing Guidelines outlined in Article 894.1 of the Code of Criminal Procedure and after this review it is clear that during any period of a suspended sentence of probation Albert Abshire would commit another crime. Albert Abshire is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution. And any lessor sentence will deprecate the seriousness of his crime. Specifically, this Court finds that the following aggravating factors are present:

1) Albert Abshire's conduct during the commission of the offense ended up reflecting cruelty to the victim.

2) There was actual violence in the commission of the offense caused by the striking of Mr. Lee with the vehicle.

3) The offense committed potentially facilitated or concealed the commission of another offense when he attempted to hide the vehicle.

4) The offense resulted in significant loss, that being death to the victim.

5) Albert Abshire has persistently been involved in criminal activity.

In considering mitigating circumstances outlined in Code of Criminal Procedure Article 894.1 this Court finds none to be applicable.

. . . .

Under the Hit and Run Statute, an individual's involvement in an accident does not give rise to the criminal charge. The criminal culpability of Albert Abshire is based on his individual actions or inactions after the accident. Based on Abshire's activities of that night, and based on his extensive criminal history it is clear that a maximum sentence is not grossly out of proportion to the severity of the crime and should not shock anyone's sense of justice.

Thereafter, Defendant was sentenced to ten years imprisonment at hard labor with credit for time served.

After allowing Defendant to proffer evidence at the hearing on his motion to reconsider sentence, the trial court remarked:

9

The Motion for Reconsideration has already been denied and must be denied.

Mr. Abshire, I will tell you that when I did my research to sentence you, when I started I had no intention of giving you a maximum sentence. But based on all of the information that was provided to me in the pre-sentence investigation report with your history and your past and the things that you had gotten out of, and what clearly appeared to me to be an indication that you hit something, knew you hit something and tried to hide from it.

. . . .

. . . But there is nothing that's been shown to me that will make me change my mind at this point. . . .

On appeal, Defendant argues that the trial court erred in failing to consider as mitigating factors, such as his attempts to facilitate insurance payments to the victim's family and his status as a first felony offender, when it sentenced him. Defendant insists that the victim's actions in causing the accident should have been considered as a mitigating factor, especially since cruelty to the victim and the pain and suffering of the victim were considered as aggravating factors. Defendant also stresses that he has repeatedly and consistently denied seeing the victim or knowing that he hit someone before the officer came to his home. Defendant makes particular reference to the proffer he made at the hearing on his motion to reconsider sentence, wherein he stated that he did not see the victim and would have stopped had he known that he had struck someone.

At sentencing, the trial court stated that no mitigating circumstances under La.Code Crim.P. art. 894.1 were applicable. The trial court also stated that one of the aggravating factors was that Defendant's conduct during the commission of the offense reflected cruelty to the victim. At the proffer hearing on the motion to reconsider, counsel for Defendant noted that Defendant partially compensated the victim's family for the criminal conduct by voluntarily admitting that he was at fault and by giving the insurance proceeds to the victim's family. In our estimation, the

10

trial court's statement that no mitigating factors were present indicates that it did not take into account any compensation that Defendant may have given to the victim's family. Importantly, however, we note that the record lacks evidence of any such compensation having been provided by Defendant.

At sentencing, the trial court read from Defendant's statement contained in the PSI wherein he stated that he "didn't know [he] hit anybody." Nevertheless, its having found no mitigating factors indicates to this court that the trial court did not believe Defendant was unaware of having struck someone.[2] The PSI contains evidence that contradicts Defendant's claim. "A determination of credibility lies within the sound discretion of the trial court, and like all questions of fact, is entitled to great weight and will not be disturbed unless clearly contrary to the evidence." *State v. Williams*, 03-3514, p. 7 (La. 12/13/04), 893 So.2d 7, 12. Given the circumstances, we cannot say that the trial court abused its broad discretion in not giving credence to Defendant's assertion.

At sentencing, the trial court focused at length on Defendant's criminal history, which indeed does not include any felony convictions. Moreover, the trial court stated that the maximum sentence was warranted based on Defendant's activities of the night of the accident and his extensive criminal history. Standing alone, the trial court's failure to consider the aforementioned circumstances in mitigation is not dispositive of whether Defendant's sentence is excessive. Therefore, we will perform an excessive sentence analysis.

The first factor of *Lisotta* requires consideration of the nature of the offense. Louisiana Revised Statutes 14:100(C)(2) provides a penalty range of a fine of not

---

[2] We note that the general comment to La.R.S. 14:100 cites *Stalling v. State*, 90 Tex.Cr.App. 310, 234 S.W. 914 (1921), for the proposition that "[t]he question as to whether or not a driver knew that he had struck a person, where the evidence is conflicting, is for the jury." We conclude that, in the instant matter, the issue of whether Defendant knew his truck had struck someone was a question of fact for the trial court, as factfinder, to decide.

11

more than five thousand dollars or ten years of imprisonment with or without hard labor or both for the crime of hit-and-run driving when death or serious bodily injury is a direct result of the accident and when the driver knew or should have known that death or serious bodily injury has occurred. The fact that the hit-and-run driving statute provides a harsher penalty range for hit-and-run offenses when death or serious bodily injury is a direct result of the accident and when the driver knew or should have known that death or serious bodily injury has occurred demonstrates the serious nature of the offense. In the instant case, a death did occur.

The second factor of *Lisotta* requires an analysis of the nature of the offender. At the time of the offense, Defendant was approximately fifty-four years old, he was divorced and has two children, and he had been self-employed as a skilled mechanic and automobile body repairman for thirty-five years. As noted above, at sentencing, the trial court reviewed Defendant's extensive criminal history. The conviction at issue is his first felony conviction, although unadjudicated criminal conduct indicates thirty-nine past arrests, several for DWI. At sentencing, the trial court noted that, when speaking with authorities regarding the accident, Defendant did not express remorse. Additionally, in the victim's family's letter to the trial judge, the family stated that, "[w]hile leaving the courtroom on November 13, 2017 [the Defendant] made comments toward the family that 'it was coming soon, it just so happened that it was me who killed him.' This showed a total[ ] lack of respect and arrogance on his part." However, in the "Offender's Statement" portion of the PSI, Defendant indicated that he was remorseful.

Sentences imposed for similar crimes are analyzed under the third factor of *Lisotta*. Before addressing this factor, we are mindful that "[m]aximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood*, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225. At sentencing,

12

the trial court referenced *State v. Davenport*, 07-254 (La.App. 3 Cir. 10/3/07), 967 So.2d 563; *Williams*, 893 So.2d 7; and *State v. Raffray*, 01-88 (La.App. 3 Cir. 6/6/01), 787 So.2d 606.

In *Davenport*, 967 So.2d 563, this court affirmed a sentence of five years of imprisonment at hard labor for the crime of hit-and-run driving after the defendant, a first-felony offender, struck and killed a pedestrian during foggy conditions. We noted that the sentencing court considered the fact that defendant searched for the victim after the accident but abandoned his efforts when he could not locate the victim, and thereafter failed to report the accident. We further noted that, hours later, the defendant turned himself in to the authorities after seeing a television segment about the accident.

In *Williams*, 893 So.2d 7, the supreme court held that a sentence of seven years of imprisonment at hard labor for hit-and-run driving was not constitutionally excessive. In that case, the defendant knew that he had caused a serious accident; one of the victims died as a result of the accident; the defendant had prior arrests for DWI, reckless driving, and driving at an excessive speed; the defendant expressed no remorse; and the probation and parole officer who prepared the PSI opposed any sentence less than the maximum allowed by law.

In *Raffray*, 787 So.2d 606, the defendant was a first-felony offender. In that case, the trial court gave lengthy reasons for sentencing; "there was abundant evidence for the court to consider alcohol consumption to be a factor"; "the record support[ed] the trial court's consideration that the defendant may have committed this offense in order to conceal the commission of another"; the defendant had an "extensive record of prior offenses that included multiple convictions for driving while intoxicated and a prior hit-and-run driving conviction"; four victims sustained

13

serious injuries, including one who would never walk again; and "the defendant significantly benefitted from the plea agreement[.]" *Id.* at 610.

On appeal, Defendant directs this court's attention to *State v. Fontenot*, 51,072 (La.App. 2 Cir. 1/11/17), 211 So.3d 1236; *State v. Wallace,* 602 So.2d 296 (La.App. 2 Cir. 1992); and *State v. Bowers*, 42,390 (La.App. 2 Cir. 9/19/07), 965 So.2d 959, *writ denied*, 07-2055 (La. 3/14/08), 977 So.2d 929, arguing that lesser sentences have been imposed upon defendants with a prior misdemeanor record.

In *Fontenot*, 211 So.3d 1236, 1238, the second circuit held that a nine-year sentence at hard labor for hit-and-run driving was not constitutionally excessive in the following context:

> [T]he state filed a bill of information charging Defendant with hit-and-run driving in that, on September 13, 2013, he operated a motor vehicle involved in or causing an accident, when a death was a direct result of the accident. The state alleged that Defendant knew or should have known that death or serious bodily injury had occurred and that he intentionally failed to stop his vehicle at the scene of the accident, to give his identity and to render reasonable aid. On January 15, 2014, Defendant pled guilty to the charge, and the state agreed that it would not file a bill charging him as a habitual offender. On February 10, 2015, the trial court sentenced Defendant to nine years at hard labor and to 30 days in lieu of paying court costs and stated that the sentences were to run concurrently. Defendant appealed, arguing that the sentence was excessive.
>
> On appeal, this court determined that the trial court failed to consider any mitigating and/or contributory factors when determining Defendant's sentence and, therefore, did not comply with La. C. Cr. P. art. 894.1. *State v. Fontenot*, 49,835 (La. App. 2d Cir. 5/27/15), 166 So. 3d 1215. Accordingly, this court vacated Defendant's sentence, ordered the trial court to conduct a presentence investigation ("PSI") and remanded for resentencing.

Thereafter, "[t]he trial court again sentenced Defendant to nine years at hard labor and to 30 days in parish jail in lieu of paying court costs," and the defendant again appealed, "arguing that his sentence [was] excessive." *Id.* The second circuit "amend[ed] Defendant's sentence to vacate the portion ordering jail time in default of payment of court costs and affirm[ed] his sentence as amended. *Id.*

In deciding to vacate the defendant's original sentence, the second circuit noted that because "no presentence investigation was done and the trial court's recitation of the facts and circumstances surrounding the accident are replete with speculation and conjecture." *Fontenot*, 166 So.3d at 1218. Upon affirming the nine-year sentence imposed by the trial court on remand, the second circuit observed that the PSI report upon which the trial court now relied "detail[ed] Defendant's extensive criminal history including charges of simple battery, domestic abuse battery, theft, possession of marijuana and a Schedule II CDS and various driving offenses." *Fontenot*, 211 So.3d at 1240.

In *Wallace*, 602 So.2d at 300, the second circuit affirmed a sentence of five years of imprisonment at hard labor for the crime of hit-and-run driving, the maximum penalty provided for by the statute in effect at that time, considering the defendant's lack of remorse, his "prior record, his use of alcohol, and the loss of life."[3] In *Bowers*, 965 So.2d 959, the second circuit affirmed concurrent sentences of forty-seven years of imprisonment at hard labor for the offense of manslaughter and five years of imprisonment at hard labor for the offense of hit-and-run driving. The defendant was also a fourth-felony offender. The appellate court affirmed both sentences, but review was seemingly limited to the sentence for manslaughter.

After a thorough review of the *Lisotta* factors, we find no manifest abuse of the trial court's broad sentencing discretion in this case. Given Defendant's extensive criminal arrest history and the fact that someone died as a direct result of the subject accident, we conclude that Defendant's ten-year sentence is not excessive.

---

[3]*See* La.R.S. 14:100(C)(2) (1989), which was subsequently amended by 1997 La. Acts No. 561, § 1.

## DECREE

For the foregoing reasons, Defendant's sentence is affirmed.

**AFFIRMED.**