942 So.2d 625 (2006)
STATE of Louisiana, Appellee,
v.
Andre ANDERSON, Appellant.
No. 41,489-KA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 2006.
*626 Edward Kelly Bauman, Louisiana Appellate Project, for Appellant.
J. Schuyler Marvin, District Attorney, John M. Lawrence, Melissa Sugar, Assistant District Attorneys, for Appellee.
Before GASKINS, CARAWAY and DREW, JJ.
GASKINS, J.
Following a jury trial, the defendant, Andre Anderson, was convicted of second degree murder. The trial court sentenced the defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendant now appeals. We affirm.

FACTS
On September 7, 2001, the body of Richard Holloway was discovered in a wooded area near Highway 160 in Bossier Parish. He had been shot multiple times, including two gunshot wounds to the head.
Subsequently, the police received anonymous tips implicating the defendant in Holloway's murder. The authorities also learned of a shooting incident on November 21, 2001, at the home of Carlos and Alice Stewart in which Mr. Stewart was injured; the defendant was identified as *627 the shooter. Comparison of the .45 caliber shell casings in the Holloway murder and several of the .45 shell casings in the Stewart case revealed they were fired by the same .45 caliber gun. The defendant also had admitted to the Stewart couple that he killed a black man from Mooretown in Bossier with a .45 for stealing approximately $30 in crack cocaine from him.
The defendant was arrested and charged with second degree murder. At trial, his girlfriend, Latarsha Smith, testified that on September 4, 2001, the defendant came to her home with Holloway and Daniel Lewis. The defendant told her he wanted her to drive the men to a location in Bossier Parish where they were going to burglarize a house. She was directed to a rural location; the three men exited the car. A few minutes later, she heard gunshots; the defendant and Lewis then returned to the vehicle without Holloway.
Lewis testified that once he and the other two men got out of the car, they walked down a dirt path single file, first Holloway, then the defendant, and finally Lewis. At some point, the defendant shot Holloway in the head. As Holloway lay on the ground, the defendant shot him several more times. The defendant then gave Lewis a .22 caliber gun and ordered him to shoot the victim; the defendant said this would prevent Lewis from reporting the murder. Because he feared for his own life and because he was certain Holloway was already dead from the multiple shots fired by the defendant, Lewis complied. He shot Holloway five or six times in the lower stomach area. (The autopsy report stated that there was a cluster of small caliber gunshot wounds to the victim's abdomen.) When Lewis asked the defendant why he killed Holloway, the defendant stated that Holloway had stolen crack cocaine from him.
The defendant was convicted as charged by a unanimous jury. He was sentenced to the mandatory sentence of life imprisonment without benefit of parole, probation, or suspension of sentence.

AUTOPSY REPORT
The defendant asserts that the trial court erred in allowing a court employee to read the victim's autopsy report to the jury without adequately determining that the pathologist who performed the autopsy was unavailable to testify at trial. He contends that his right to cross-examine the pathologist, "the only medical witness who had possibly exculpating knowledge," was violated.
Dr. Stephen Cogswell performed the autopsy on Holloway. By the time of trial, Dr. Cogswell had moved to Florida and was in poor health. Additionally, he was caring for his ill father. The state arranged for Dr. George McCormick, the coroner of Caddo Parish, to testify in his expert capacity as coroner as to the findings of Dr. Cogswell's report. However, Dr. McCormick died suddenly less than a week before trial.
The trial court declared both Dr. McCormick and Dr. Cogswell unavailable. The court accepted the prosecutor's representations, as an officer of the court, that she had spoken to Dr. Cogswell and that, despite the state's reasonable efforts to secure his presence, he was unwilling to obey the subpoena to testify due to his poor health and that of his father. The court found that Dr. Cogswell was unavailable to testify under La. C.E. art. 804.
As to the autopsy report, the court held that it was a self-proving document and found no prejudice in having a layperson read it to the jury. The defendant objected to anything other than the fact of death and cause of death being read into the record. The trial court allowed a court *628 employee to read the autopsy report into the record.
A coroner's report is competent evidence of death and the cause of death, but not of any other fact. La. C. Cr. P. art. 105. It is excepted from the hearsay rule and is admitted in evidence as proof of death and the cause thereof. State v. Kelly, 375 So.2d 1344 (La.1979); State v. Rhodes, 29,207 (La.App.2d Cir.1/22/97), 688 So.2d 628, writ denied, 97-0753 (La.9/26/97), 701 So.2d 980; State v. Garner, 39,731 (La.App.2d Cir.9/8/05), 913 So.2d 874, writ denied, 2005-2567 (La.5/26/06), 930 So.2d 19. The coroner or one of the coroner's deputies may testify as to the victim's death or the cause thereof, even where the testifying witness did not perform the autopsy or prepare the report. State v. Rhodes, supra; State v. Garner, supra.
In State v. Vincent, 338 So.2d 1376 (La. 1976), the defendant argued that the trial court improperly allowed a law clerk to read portions of the coroner's report to the jury and improperly admitted the coroner's report without the testimony of the coroner to verify the report. The Louisiana Supreme Court did not find any error in having the law clerk read the coroner's report to the jury and found any error pertaining to a lack of authentication to be harmless in light of the fact that the coroner's report was cumulative evidence of the cause of death.
The admission of the coroner's report was competent evidence of Holloway's death and the cause thereof. Consequently, the fact that the trial court allowed a court employee to read the autopsy report to the jury was not prejudicial.
Additionally, the state presented the victim's death certificate which described his death as a homicide and stated that he was "found with multiple gunshot wounds." Death certificates are admissible as an exception to hearsay and the availability of the declarant is immaterial under La. C.E. art. 803(9). The state also called Daniel Lewis, who testified that he saw the defendant initially shoot the victim in the head and then several times when he was lying on the ground. Lewis testified that Holloway was already dead before the defendant forced him to fire additional bullets into the body. Therefore, because the coroner's report was cumulative evidence of the victim's death and the cause thereof, any failure to present the coroner's report as evidence, without the coroner's testimony to authenticate the report, is not a substantial violation of the defendant's statutory or constitutional rights. Thus, we find that it is unnecessary to address the issue of whether the trial court improperly declared Dr. Cogswell unavailable.
The defendant also contends that he was deprived of his confrontation rights under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The threshold question under Crawford is whether the autopsy report was testimonial or nontestimonial in nature. In State v. Leonard, XXXX-XXXX (La.App. 1st Cir.4/27/05), 915 So.2d 829, reversed on other grounds, XXXX-XXXX (La.6/16/06), 932 So.2d 660, that court found that the narrowly drawn La. C. Cr. P. art. 105 rendered the coroner's report as nontestimonial hearsay and thus admissible under Crawford because it was admissible only for the purpose of proving death and cause of death. Courts in other states have found that autopsy reports are generally nontestimonial under Crawford. See State v. Lackey, 280 Kan. 190, 120 P.3d 332 (2005), cert. denied, ___ U.S. ___, 126 S.Ct. 1653, 164 L.Ed.2d 399 (2006); People v. Durio, 7 Misc.3d 729, 794 N.Y.S.2d 863 (N.Y.Sup.2005); Moreno Denoso v. State, 156 S.W.3d 166 (Tex.App.2005).
*629 According to the autopsy report, the victim's cause of death was "multiple gunshot wounds." The "narrative of findings" recounted that his death was due to "multiple penetrating and perforating, indeterminate range gunshot wounds, resulting in laceration of vital organs and blood loss." The report then detailed 12 gunshot wounds, two of which were to the head, three to the chest, six to the abdomen, and one to the arm. The autopsy report describes the location of the wounds, the injuries inflicted by each wound, the path of the bullet, and whether a projectile was recovered. The information in the autopsy report was routine, descriptive, and nonanalytical; i.e., it was nontestimonial in nature and thus did not trigger the Crawford mandate for cross-examination pursuant to the Confrontation Clause.
The defendant complains that the state's failure to present Dr. Cogswell as a witness prevented him from cross-examining him as to whether the victim was still alive when Lewis fired shots at him because "[o]nly the autopsy report and the testimony of the person who prepared it can verify which bullet wounds may have caused Richard Holloway's untimely death." However, any medical expert including one subpoenaed by the defense could have addressed this issue utilizing the information contained in the coroner's report. Furthermore, the issue of which bullet wounds were fatal is immaterial to the defendant's guilt. According to Daniel Lewis' unrefuted testimony, he was compelled by the defendant to fire shots at the victim after the defendant had already shot the victim several times. Thus, even had the shots fired by Lewis been fatal, the defendant would still be a principal to second degree murder. La. R.S. 14:24.
This assignment of error is meritless.

OTHER CRIMES EVIDENCE
The defendant also argues that it was prejudicial error to allow Carlos Stewart to testify about another crime committed by the defendant without first conducting a Prieur hearing. The state argues that the evidence was properly admitted for the purpose of "narrative cohesiveness and completeness" to explain how law enforcement discovered that the same weapon was used in shooting Richard Holloway and Carlos Stewart. The state argues that this falls within the doctrine of integral act evidence, formerly known as res gestae, and that evidence of other crimes used to complete the story of the crime is admissible.
Generally, evidence of other acts of misconduct is not admissible because it creates the risk that the defendant will be convicted of the present offense simply because the unrelated evidence establishes him or her as a "bad person." La. C.E. art. 404(B)(1); State v. Jackson, 625 So.2d 146, 148 (La.1993). This rule of exclusion stems from the "substantial risk of grave prejudice to the defendant" from the introduction of evidence regarding his unrelated criminal acts. State v. Prieur, 277 So.2d 126, 128 (La.1973). However, evidence of other crimes may be admissible if the state establishes an independent and relevant reason, i.e., to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. La. C.E. art. 404(B)(1). Even when the other crimes evidence is offered for a purpose allowed under Article 404, the evidence is not admissible unless it tends to prove a material fact at issue or to rebut a defense. The probative value of the extraneous crimes evidence must outweigh its prejudicial effect. La. *630 C.E. art. 403; State v. Jacobs, XXXX-XXXX (La.5/15/01), 803 So.2d 933, cert. denied, 534 U.S. 1087, 122 S.Ct. 826, 151 L.Ed.2d 707 (2002); State v. Hatcher, 372 So.2d 1024, 1033 (La.1979).
A trial court's ruling on the admissibility of evidence of other crimes will not be overturned absent an abuse of discretion. State v. Cooks, 36,613 (La.App.2d Cir.12/4/02), 833 So.2d 1034.
The state gave pretrial notice of its intent to use other crimes evidence in two separate pleadings. Early in the trial, the court heard arguments on the issue and ruled that the evidence of the Stewart shooting was admissible.
Identity was a key issue in the instant case. Evidence that the same gun was used in both the September 2001 murder of Richard Holloway and the November 2001 shooting of Carlos Stewart was relevant to show that the defendant killed Holloway. Mr. Stewart testified that the defendant was the man who shot him at his residence. Mrs. Stewart, who was in another room of the house at the time of the shooting, testified as to the defendant's presence in the house before and after the shooting. She further testified that when she asked Mr. Stewart who shot him immediately afterwards, he was too gravely injured to answer her verbally; however, he was able to give her a look that communicated to her that the defendant was involved. As soon as the police removed the defendant from her presence, Mrs. Stewart informed an officer that she believed the defendant was involved in Mr. Stewart's shooting.
We find that the state proved the defendant's role in the other crime by clear and convincing evidence.[1] There was no substantial likelihood of misidentification given Mr. Stewart's testimony that the defendant shot him.
Since we find that the other crimes evidence was properly admitted to prove identity, we pretermit the issue of evidence of integral acts, or res gestae.
This assignment of error is without merit.

CONCLUSION
The defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The standard for determining a defendant's connexity with the other prior crimes, i.e., by a preponderance of the evidence or by clear and convincing evidence, for purposes of determining admissibility of other crimes evidence, remains an open question in the Louisiana Supreme Court. See La. C.E. art. 1104. See also State v. Jacobs, supra, at footnote 15; and State v. Galliano, 2002-2849 (La.1/10/03), 839 So.2d 932, at footnote 1.