966 So.2d 154 (2007)
STATE of Louisiana, Appellee
v.
Ryan D. RUSSELL, Sr., Appellant.
No. 42,479-KA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 2007.
*158 Louisiana Appellate Project by Annette F. Roach, Lake Charles, Ryan D. Russell, Sr., for Appellant.
William R. Jones, District Attorney, Robert E. Bethard, Assistant District Attorney, for Appellee.
Before STEWART, GASKINS and PEATROSS, JJ.
STEWART, J.
The defendant, Ryan Russell, Sr. ("Russell"), was convicted of manslaughter and was sentenced to 40 years at hard labor. The defendant now appeals. Finding no merit in his claims, we affirm the defendant's conviction and sentence.

FACTS
Most of the material facts are uncontroverted. On August 21, 2004, the defendant shot his stepfather, John Shoebroek, twice in the head after the two men had a heated argument. The defendant and his son, Ryan, Jr. (then age 8) had been living with Shoebroek and Russell's mother for several months prior to the shooting. Russell's daughter, Halie (then age 6), had been living with his mother her entire life.
The events giving rise to the shooting began a few months earlier when Russell became suspicious that Shoebroek may have engaged in inappropriate behavior with Halie. Notwithstanding Shoebroek's and Halie's denial that anything inappropriate had occurred, Russell's suspicions festered and ultimately led to defendant's final confrontation with Shoebroek on August 21, 2004. On that day, Russell was watching a movie with his two children inside the home when he decided to again confront Shoebroek about his concerns. Shoebroek was outside the home near the shed apparently doing some welding work. The conversation between Russell and Shoebroek quickly escalated. Russell grabbed a .22 caliber semi-automatic rifle and shot Shoebroek once above the ear and once in the middle of the forehead. Russell claims he shot Shoebroek in self-defense because Shoebroek was approaching him with a machete. There were no other witnesses to the shooting.
Russell admitted that he lied to his mother, Rhonda Shoebroek, when she later asked the whereabouts of her husband. As the week passed, Ms. Shoebroek became increasingly concerned and on August 30, 2004, she went to the police to file a report. When police searched the Shoebroek property (with Rhonda's consent), they arrested Russell on an unrelated outstanding warrant. The next day, Shoebroek's *159 body was found buried in a shallow grave in the woods near the home.
While in custody, Russell eventually waived his Miranda rights and gave both a verbal and written confession to police. He admitted killing Shoebroek, burying Shoebroek's body, and destroying much of the evidence.
After Shoebroek's body was unearthed, it was taken to Forensic Pathologists, Inc. in Shreveport, where an autopsy was conducted on September 2, 2004 by Caddo Parish Coroner, Dr. George McCormick, with the assistance of lab director Lisa Hayes. Dr. McCormick prepared and signed a coroner's report confirming that Shoebroek died of two gunshot wounds to the head. Dr. McCormick died in September 2005, prior to the trial in this matter.
The defendant was charged with second degree murder. A jury trial was held October 2-4, 2006. Chief Deputy Tracy Scott of the Red River Sheriff's Office testified that he investigated the crime scene and took the defendant's statements while he was in custody. Chief Deputy Scott read both his report on the defendant's oral confession as well as the written statement given by Russell, who also testified at trial.
The defendant admitted dragging Shoebroek's body approximately 390 feet from the area where the shooting was considered to have occurred and burying the body in a shallow grave. The grave was approximately three feet deep. Russell camouflaged the gravesite with dirt and leaves to make it appear consistent with its natural surroundings. At the site of the alleged confrontation, Scott testified that there was no physical evidence of any struggle between the defendant and Shoebroek. Russell admitted that he destroyed Shoebroek's wallet and burned Shoebroek's shoes and cell phone after the killing. Russell also testified that he put the machete back in the shed and vacuumed the shell casings to hide evidence of the shooting. Chief Deputy Scott testified that a machete was found in the shed, but police were unable to collect any fingerprints from it because the material it was constructed with was not conducive to holding fingerprints.
Russell testified that he shot Shoebroek in self-defense. He identified several purported threats that Shoebroek previously directed toward others, but it was undisputed that no threats were ever directed toward Russell or his children. Russell also admitted that Shoebroek never hit him. Regarding the events of August 21, 2004, he admitted at trial that he had been drinking that day and that he drank five or six beers before his confrontation with Shoebroek. Lastly, Russell testified that when Shoebroek allegedly approached him with a machete, defendant grabbed the rifle and pressed the end of the rifle barrel against Shoebroek's forehead to "push him back" and that the subsequent two gunshots were a "sudden reaction."
The parties stipulated at trial that Shoebroek was shot twice in the head and that he died of these gunshot wounds. The state also introduced Dr. McCormick's coroner's report into evidence over defendant's objections made in both pretrial motions and at trial. The trial court held a hearing outside the presence of the jury on October 2, 2006, to determine whether the report should be excluded. After hearing testimony from Lisa Hayes, Dr. McCormick's lab director, the trial court allowed the report:
Lisa Hayes said she remembered this case because the body was buried and badly decomposed. She said that Dr. McCormick supervised the details of the autopsy of the victim in this case. Her testimony was very convincing with regard to this case. The problem with the *160 testimony of Lisa Hayes is that she had inconsistencies with regard to many required procedures. She admitted that many cases were done without proper supervision of Dr. McCormick. The procedures which were used by Dr. McCormick with regard to autopsies is very disturbing to this Court. Although the testimony of Lisa Hayes is not credible on numerous details, this Court can not [sic] say anything was done wrong which could affect the outcome of this particular autopsy.
This Court has given great consideration to the decision reached in this ruling, but based on the testimony and evidence, the defendant's motion is denied. The autopsy of Dr. McCormick is allowed into evidence.
Only portions of Dr. McCormick's report were read to the jury by the state's expert forensic pathologist, Dr. Frank Peretti. Specifically, Dr. Peretti gave his opinion as to Shoebroek's death and cause of death based on his review of Dr. McCormick's autopsy report and photographs of the bullet wounds. Defendant's counsel had the opportunity to fully cross-examine Dr. Peretti as to the bases of his opinions. Dr. Peretti testified that the forehead wound was a tight "contact" wound, meaning that the gun barrel had been "firmly against" the victim's head when the trigger was pulled. Dr. Peretti testified that the other gunshot wound was fired from a distance of at least two feet away.
Following trial, the jury convicted the defendant of the responsive verdict of manslaughter. On December 20, 2006, the trial court sentenced defendant to 40 years in prison at hard labor, with credit for time served. The trial court denied defendant's motions for post verdict judgment of acquittal and reconsideration of sentence. This appeal follows.

DISCUSSION
Motion for Post Verdict Judgment of Acquittal
The defendant argues that his actions in killing John Shoebroek were justified because he was in fear of receiving great bodily harm or possibly death if he did not stop the "machete-wielding" Shoebroek. Russell further contends that the state failed to meet its burden that his actions were not justified.
The state argues that the evidence supports the jury's verdict of manslaughter and that the evidence demonstrates that the defendant's actions were not justified.
When sufficiency of the evidence and one or more trial errors are raised as issues on appeal, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is because the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, reviewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
La. R.S. 14:31 defines manslaughter, in pertinent part, as follows:
A. Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to *161 deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed;
* * * *
On August 21, 2004, La. R.S. 14:20 provided, in pertinent part:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
(2) When committed for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to excite the fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, XXXX-XXXX (La.10/16/95), 661 So.2d 442. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of witnesses, the matter is one of the weight, not the sufficiency, of the evidence. State v. Allen, 36,180 (La.App. 2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, Allen v. Louisiana, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
When self-defense is raised as an issue by the defendant, the state has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. State v. Johnson, 41,428 (La.App. 2d Cir.9/27/06), 940 So.2d 711; State v. Garner, 39,731 (La.App. 2d Cir.11/17/05), 913 So.2d 874, writ denied, 2005-2567 (La.5/26/06), 930 So.2d 19. Factors to consider in determining whether a defendant had a reasonable belief that the killing was necessary include the excitement and confusion of the situation, the possibility of using force or violence short of killing, and the defendant's knowledge of the assailant's bad character. State v. Spivey, 38,243 (La.App. 2d Cir.5/12/04), 874 So.2d 352; State v. Hardeman, 467 So.2d 1163 (La.App. 2d Cir.1985). Although there is no unqualified duty to retreat, the possibility of escape is a factor to consider in determining whether a defendant had a reasonable belief that the use of deadly force was necessary to avoid the danger. State v. Brown, 414 So.2d 726 (La.1982); State v. Johnson, supra.
In this case, the defendant was found guilty of manslaughter, a lesser included offense of second degree murder. La. C. Cr. P. art. 814(A)(3). The defendant testified that he grabbed a loaded rifle, chambered it, pressed the end of the rifle's barrel firmly against Shoebroek's forehead, and shot Shoebroek two times in the head, inflicting fatal wounds, during a heated argument. The record demonstrates that there was sufficient evidence to support the defendant's conviction for manslaughter, unless the state failed to prove, beyond a reasonable doubt, that the *162 homicide was not committed in self-defense.
After reviewing the record in its entirety, a rational fact-finder could have found, beyond a reasonable doubt, that there was no reasonable hypothesis that the defendant acted in self-defense based on the following facts:
 The defendant admitted that he drank five or six beers prior to the purported confrontation.
 The defendant testified at trial that he initiated the August 21, 2004, confrontation with Shoebroek.
 The testimony reveals that defendant believed Shoebroek had previously engaged in inappropriate behavior with defendant's daughter, Halie. A rationale juror could reasonably conclude that defendant had motive for the murder and did not act in self-defense.
 Russell's story at trial that he allowed a "machete-wielding" Shoebroek to come within arms-length (close enough for defendant to be able to place the end of the rifle barrel firmly against Shoebroek's forehead for the first shot) is simply not logical.
 Russell's story that he shot Shoebroek in rapid succession is also not corroborated by Dr. Peretti's testimony concerning the nature of the actual gunshot wounds. Based on his uncontroverted expert opinion, one gunshot occurred with the gun against the victim's head and the other gunshot was fired at a distance of at least two feet. The jury could reasonably conclude, based on the forensic evidence as well as defendant's illogical story, that the first shot was the shot fired from a distance, inflicting the wound above the victim's ear, and that the final shot, the "contact" wound to the forehead, was done in execution style.
 The state presented testimony that there were no signs of a physical struggle at the site of the alleged confrontation and shooting.
 The defendant admitted that for over a week he lied to both his mother and police about Shoebroek's disappearance. Fabrication is evidence of consciousness of guilt, not self-defense. State v. King, 41,084 (La.App. 2d Cir.6/30/06), 935 So.2d 815, writ denied, XXXX-XXXX (La.2/16/07), 949 So.2d 411.
 The state presented much evidence of concealment (e.g., camouflaging grave, removing physical items, purposeful destruction of evidence, sanitizing crime scene, etc.), concealment which defendant admitted. Such evidence tends to prove guilty knowledge and cuts against a claim of self-defense. State v. King, supra; State v. Hudson, 33,357 (La.App. 2d Cir.5/10/00), 760 So.2d 591.
 Russell's version of the killing at trial was contradictory in significant respects to his prior statements to police. His first version to police was that he fired both gunshots immediately after Shoebroek pulled out the machete from behind a metal table in the shed. At trial, the defendant testified that he did not shoot Shoebroek until the rifle barrel was pressed against Shoebroek's forehead. Russell's versions also differed as to the time he moved the body and the number of times he moved the body.
In short, the jury did not believe defendant's version of the events. Due to the varied versions of what happened, the jury was justified in discounting any and all of defendant's self-serving testimony concerning his claim of self-defense. Contrary to the defendant's contention, the *163 jury rationally could have found that the evidence presented, including the nature of the victim's wounds, the crime scene and his own implausible statements about the killing, established beyond a reasonable doubt that the murder was not perpetrated in self-defense.
This assignment of error lacks merit.
Unconstitutionality of La.C.Cr.P. art. 105
The defendant asserts that La. C. Cr. P. art. 105 is unconstitutional to the extent it provides a hearsay exception for the admissibility of coroners' reports and the process verbal. He argues that the trial court erred in admitting Dr. McCormick's report concerning the autopsy of John Shoebroek because it violated his constitutional right to confrontation and it was not proven to be trustworthy. Defendant also argues that the trial court erred by permitting Dr. Frank Peretti to give his expert opinion when such opinion was based solely on his review of the challenged coroner's report and photos.
The state contends that defendant admitted that he shot and killed Shoebroek and thus it is illogical for defendant to challenge the introduction of the report that describes the death and cause of death. The state argues that a coroner's report is admissible under La. C. Cr. P. art. 105 as competent evidence of the death and cause of death. The state further asserts that an expert witness may testify and use the coroner's report in arriving at his conclusion regarding the victim's death and cause thereof despite the fact the expert did not perform the autopsy.
As an initial matter, statutes are presumed constitutional, and any doubt is to be resolved in the statute's favor. State v. Cunningham, 2004-2200 (La.6/13/05), 903 So.2d 1110. The party challenging the constitutionality of a statute bears a heavy burden in proving that the statute is unconstitutional. Id.
The challenged statute herein, La. C. Cr. P. art. 105, provides:
In a case involving the apparent commission of a crime, the coroner shall make a written report of his investigation to the district attorney within ten days after the completion thereof. In homicide cases the coroner's report shall certify the cause of death.
The report shall be in addition to the process verbal of an autopsy required by R.S. 33:1565. [Footnote omitted.]
A coroner's report and a process verbal of an autopsy shall be competent evidence of death and the cause thereof, but not of any other fact.
The Sixth Amendment of the United States Constitution and Article I, § 16, of the Louisiana Constitution guarantee an accused in a criminal prosecution the right to be confronted with the witnesses against him. The primary purpose behind this right is to secure for the defendant the opportunity for cross-examination. State v. Garner, 913 So.2d at 884; State v. Hotoph, 99-243 (La.App. 5th Cir.11/10/99), 750 So.2d 1036, writs denied, XXXX-XXXX & XXXX-XXXX (La.6/30/00), 765 So.2d 1062, 1066. Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Id.; State v. Hillard, 398 So.2d 1057 (La.1981).
In Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Sixth Amendment's Confrontation Clause bars testimonial hearsay unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. The U.S. Supreme Court expressly stated, however, that "not all hearsay implicates the Sixth Amendment's core *164 concerns." Crawford v. Washington, 541 U.S. at 51, 124 S.Ct. at 1364. The Confrontation Clause applies to "witnesses" against the accused. The Court noted that its analysis of "testimony" excludes at least some hearsay exceptions, such as business records. Id., 541 U.S. at 56, 124 S.Ct. at 1354 ("[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial-for example, business records or statements in furtherance of a conspiracy.").
By its express terms, La. C. Cr. P. art. 105 does not authorize admission of coroner's reports to prove any facts other than death and cause of death. See, State v. Monroe, 345 So.2d 1185, 1187 (La.1977). Thus, the threshold question is whether a coroner's report admitted only for the purpose of proving death and cause of death pursuant to Article 105 is testimonial in nature.
The proof of the death or cause of death by a coroner's report is not proof of guilt or innocence. Generally, such evidence does not implicate the accused. It is rem ipsam evidence. State v. Holmes, 258 La. 221, 245 So.2d 707 (1971), cert. denied, Holmes v. Louisiana, 406 U.S. 909, 92 S.Ct. 1612, 31 L.Ed.2d 820 (1972). In State v. Anderson, 41,489 (La. App. 2d Cir.11/1/06), 942 So.2d 625, this court agreed with the rationale set forth in State v. Leonard, XXXX-XXXX (La.App. 1st Cir.4/27/05), 915 So.2d 829, reversed on other grounds, XXXX-XXXX (La.6/16/06), 932 So.2d 660, finding that the narrowly drawn La. C. Cr. P. art. 105 rendered the coroner's report as nontestimonial hearsay and thus admissible under Crawford, because it was admissible only for the purpose of proving death and cause of death. Courts in other states have found that coroner's reports are generally nontestimonial under Crawford. See, U.S. v. Feliz, 467 F.3d 227 (2nd Cir.2006), cert. denied, Erbo v. U.S., ___ U.S. ___, 127 S.Ct. 1323, 167 L.Ed.2d 132 (2007); State v. Lackey, 280 Kan. 190, 120 P.3d 332 (2005), cert. denied, 547 U.S. 1056, 126 S.Ct. 1653, 164 L.Ed.2d 399 (2006) [overruled on other grounds, State v. Davis, 283 Kan. 569, 158 P.3d 317 (2007)]; People v. Durio, 7 Misc.3d 729, 794 N.Y.S.2d 863 (2005); Moreno Denoso v. State, 156 S.W.3d 166 (Tex.App.2005); Perkins v. State, 897 So.2d 457 (Ala.Crim.App.2004).
Because La. C. Cr. P. art. 105 is expressly limited to the admission and use of coroner's reports only for nontestimonial purposes, the defendant has not met his burden in challenging the constitutionality of this article.
Admissibility of the Autopsy Report
The defendant contends that the trial court erred in admitting the autopsy report into evidence in this case as Ryan Russell was denied the right to cross-examine the maker of the report, it was not proven to be trustworthy, and the prosecution failed to show that the maker of the report had no incentive to mislead. He asserts that the trial court erred in denying the motion in limine.
A coroner is required to make a written report of his investigation to the district attorney in any case involving a homicide. La. C. Cr. P. art. 105. Pursuant to article 105, such a report is excepted from the hearsay rule and may be admitted in evidence as proof of death and the cause thereof. State v. Trahan, 576 So.2d 1, 9 (La.1990); State v. Monroe, supra; State v. Garner, supra; State v. Rhodes, 29,207 (La.App. 2d Cir.01/22/97), 688 So.2d 628, 639 (citing State v. Kelly, 375 So.2d 1344 (La.1979), writ denied, 97-0753 (La.9/26/97), 701 So.2d 980. Although it appears that Dr. McCormick performed the autopsy and prepared the report (with Lisa Hayes' assistance), it would have been *165 permissible for a coroner's deputy to testify as to the victim's death or the cause thereof, even where the testifying witness did not perform the autopsy or prepare the report. State v. Garner, supra; State v. Rhodes, supra.
The trial court admitted the coroner's report pursuant to La. C. Cr. P. art. 105 only after Lisa Hayes, Dr. McCormick's lab director who testified that she assisted during the entire Shoebroek autopsy, was questioned and cross-examined about the methods and procedures used during the Shoebroek autopsy. The record reveals that the information contained in the report was routine, descriptive, nonanalytical, and thus, nontestimonial in nature. According to the autopsy report, John Shoebroek's cause of death was "[m]ultiple (2) gunshot wounds of the head." The narrative of findings recounted that the victim was "discovered in a shallow grave with two gunshot wounds of the head. Death was due to cerebral laceration." The report then details the two gunshot wounds in the victim's head. The report describes the location of the wounds, the injuries inflicted by each wound, whether the path of the bullets could be determined, and whether any fragments were recovered. The report does not contain any conclusion or speculation concerning which gunshot was fired first. The only portion of the report that was read to the jury was read by Dr. Peretti in conjunction with Dr. Peretti's expert testimony as to Shoebroek's death and cause of death, and more specifically, the nature of the gunshot wounds. Russell simply cannot articulate any legitimate basis under governing law for his argument that his confrontation clause rights were violated by the mere introduction of this particular coroner's report.
Additionally, when the coroner's report is admitted without the testimony of the coroner as to the authenticity of the report and when the report is cumulative evidence as to death and cause of death, there is no substantial violation of the defendant's statutory or constitutional rights. State v. Vincent, 338 So.2d 1376 (La.1976) explains:
Neither the coroner's testimony nor the certification of the coroner's report was required to prove the victim's death. That fact could be established by any competent evidence, and proof of death was made otherwise at this trial. Introduction of the coroner's report and the copy of the process verbal of the autopsy was merely cumulative and added little to the proof of death. The defense objection is rendered even less valid by the fact that the trial judge permitted the jury to hear only those portions of the report which pertained to death, the cause of death and the time of death. La.Code Crim. Pro. art. 105; State v. Holmes, 258 La. 221, 245 So.2d 707 (1971).
* * * *
Any error which occurred by the State's failure to verify the report and the process verbal by certification, or by the testimony of the Coroner, was not a substantial violation of a statutory or constitutional right. La.Code Crim. Pro. art. 921.
State v. Vincent, supra, at 1385.
In the case sub judice, the defendant admitted that he shot Shoebroek twice in the head and that these gunshots killed Shoebroek. The defendant also admitted that one of the head wounds was a "contact" wound (i.e., that the gun was placed firmly against Shoebroek's head when it was fired). Any purported error by admitting the coroner's report without the testimony of Dr. McCormick *166 to authenticate the report was harmless[1] because the coroner's report was cumulative evidence of the victim's uncontroverted death and cause of death. See, State v. Anderson, supra.
Admissibility of Expert Testimony
The defendant asserts that the trial court erred in allowing the expert opinion of Dr. Peretti, based on the autopsy report signed by Dr. McCormick. He argues that the trial court erred in denying the motion in limine.
We find no merit in the defendant's argument that it was improper for the trial court to allow Dr. Peretti to give his expert opinion based solely on his review of the coroner's report and photos. This argument overlooks the fact that Dr. Peretti's testimony was his own expert medical opinion as to Shoebroek's death and cause thereof. As a qualified expert forensic pathologist, Dr. Peretti could testify, based on information obtained from others, as to his opinion on other issues in the case. La. C.E. art. 703; State v. Stacy, 27,136 (La.App. 2d Cir.12/22/95), 665 So.2d 390, 398, reversed on other grounds, 96-0221 (La.10/15/96), 680 So.2d 1175. The defendant fully cross-examined Dr. Peretti as to the bases of his expert opinions. The defendant has cited no authority that bars a medical expert from rendering his own expert opinion based on a review of medical records prepared by others.
A medical expert's opinion is almost always based on some degree of hearsay, given the fact that numerous other medical personnel and records may be involved in the treatment of a patient. Indeed, this court has previously upheld the propriety of allowing expert forensic pathologist opinions based on autopsy reports prepared by others. See, State v. Garner, supra; State v. Stacy, supra. The issue is not one concerning admissibility, but rather the weight a fact finder gives to this expert testimony, dependent upon the professional's qualifications and experience, and the facts upon which his opinion is based. State v. Garner, 913 So.2d at 885.
Therefore, the trial court did not commit reversible error in admitting the coroner's report or by allowing Dr. Peretti's expert opinions based solely on his review of the coroner's report and photos.
Excessive Sentence
The defendant argues that the trial court failed to sufficiently consider the mitigating facts set forth in La. C. Cr. P. art. 894.1 in sentencing defendant. Defendant contends that his 40-year maximum sentence must be set aside, and a lesser sentence imposed, because it is excessive and is not supported by the record.
The state argues that the trial court explicitly noted La. C. Cr. P. art. 894.1, and explained in detail why it was imposing the maximum sentence. The state asserts that defendant's sentence was not excessive given the record evidence and that he should consider himself fortunate *167 not to have been convicted for second degree murder.
The offense of manslaughter is punishable by imprisonment at hard labor for not more than 40 years. La. R.S. 14:31(B). This court's case law on sentencing is well settled. The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App. 2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Hampton, 38,017 (La.App. 2d Cir.1/28/04), 865 So.2d 284, writs denied, XXXX-XXXX (La.3/11/05), 896 So.2d 57 and 2004-2380 (La.6/3/05), 903 So.2d 452. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App. 2d Cir.4/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.6/24/05), 904 So.2d 728.
Second, a sentence violates La. Const. art. 1 § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in the light of the harm done to society, it shocks the sense of justice. State v. Weaver, XXXX-XXXX (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992).
A trial court has broad discretion to sentence. Absent a showing of manifest abuse of that discretion, this court may not set aside a sentence as excessive. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158; State v. June, 38,440 (La.App. 2d Cir.5/12/04), 873 So.2d 939.
As a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender. State v. Johnson, 38,415 (La.App. 2d Cir.7/14/04), 878 So.2d 869, writ denied, XXXX-XXXX (La.1/3/06), 920 So.2d 222; State v. Grissom, 29,718 (La.App. 2d Cir.8/20/97), 700 So.2d 541.
Prior to the December 20, 2006, sentencing hearing, defendant's counsel filed a sentencing memorandum identifying several factors which he believed should be taken into account as mitigating factors pursuant to La. C. Cr. P. art. 894.1. Prior to imposing sentence, the trial court also held an evidentiary hearing where the defense presented expert psychiatric testimony regarding defendant's mental state.
As discussed earlier, the trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines of La. C. Cr. P. art. 894.1. Moreover, there is no requirement that specific matters be given any particular *168 weight at sentencing. State v. Jones, 33,111 (La.App. 2d Cir.3/1/00), 754 So.2d 392, writ denied, XXXX-XXXX (La.2/2/01), 783 So.2d 385. Although defendant may be correct that the trial court did not enumerate or specifically discuss by paragraph numbers the factors found in La. C. Cr. P. art. 894.1 during the sentencing hearing, the record clearly indicates that the trial court adequately considered those guidelines. In fact, the trial court explicitly stated that it considered defendant's age, the pre-sentence investigation report (which revealed defendant's prior adult criminal history, including a conviction for simple battery), defendant's "Pre-Sentencing Memorandum," and the guidelines set forth in La. C. Cr. P. art. 894.1. The trial court then provided a detailed explanation for the maximum 40-year sentence:
In looking at [Article 894.1] in reference to this particular case, I think in this case to give less than [sic] jail time would deprecate the serious nature of the offense. In this particular case the offender knowingly created a risk of death or great bodily harm. The offender used actual violence in this case. The offense resulted in permanent injury, being death, and there was a dangerous weapon involved. In the defendant's memorandum, Mr. Guillet, that you filed, you indicated a wide range of sentences. Personally, as you brought up in the pre-trial with [the assistant district attorney], I've seen cases where a ten year sentence in a manslaughter case may be excessive in certain circumstances. I purposefully delayed making any judgment on this particular case until after I heard the evidence. I told them in pre-trial I was still open in my mind until I heard the testimony and evidence presented in court. In this particular case, Mr. Russell, you took the life of John Shoebroek. I heard all the evidence presented at trial. Mr. Russell not only killed Mr. Shoebroek, afterwards he buried his body. It seems to me, Mr. Russell, after hearing all the evidence and listening to the testimony regarding the patterns of the bullets and the burying of the body, if there ever was a manslaughter case where the defendant should receive the maximum sentence it's this particular case.
The remarks made by the trial court indicate that he found no mitigating circumstances. While the defendant may be correct that some of the factors mentioned by the trial court during sentencing are typical in manslaughter cases and thus would not be relevant as aggravating factors, the trial court noted other factors that justify the maximum sentence. Specifically, the judge found that defendant acted knowingly. Indeed, this reference to defendant's state of mind, coupled with the judge's remarks regarding the nature of the gunshot wounds (i.e., two shots to the head, including a "contact" shot to the forehead) and defendant's burial of the body, suggests that the trial court believed that defendant received great lenience from the jury by being convicted of the lesser crime of manslaughter instead of the crime charged, second degree murder. Second degree murder would have resulted in the mandatory sentence of life imprisonment without the benefit of parole, probation, or suspension of sentence.
This court has upheld 40-year maximum sentences in manslaughter cases similar to, and even less egregious than, the instant case. In State v. Johnson, supra, a former sheriff's deputy was given 40 years for fatally shooting his ex-girlfriend, once in the side and once in the head, even though he notified police and the victim's family immediately after the shooting. There was no attempt to destroy evidence or *169 conceal the crime. There was no record of prior criminal history.
In State v. Hudson, 33,357 (La.App. 2d Cir.5/10/00), 760 So.2d 591, a 25-year-old man was given 40 years for killing a male acquaintance who made a sexual overture to him. At trial, the defendant admitted killing the victim but claimed it was done in self-defense. The defendant attempted to conceal evidence of the crime. The defendant, however, expressed remorse at sentencing. He had no record of prior criminal history.
In State v. Hall, 36,335 (La.App. 2d Cir.9/18/02), 828 So.2d 120, the defendant's 40-year maximum sentence was upheld for killing his girlfriend with whom he had lived for 15 years. The defendant claimed it was done in self-defense, but eventually pled guilty to manslaughter. His prior criminal history included convictions for battery, theft, and simple robbery.
Considering the record and the totality of the circumstances of this case, the sentence imposed is neither grossly disproportionate to the severity of the offense of conviction nor is it shocking to the sense of justice.
These assignments are therefore without merit.

ERROR PATENT
The defendant's brief makes reference to purported error patent for failing to waive any sentencing delays. On December 11, 2006, defendant filed a motion for post verdict judgment of acquittal. On December 20, 2006, the date set for sentencing, the trial court orally denied defendant's motion. The trial court then proceeded to hear testimony relating to sentencing. On that same date, defendant was sentenced. It does not appear from the record that defendant expressly waived the required 24-hour waiting period pursuant to La. C. Cr. P. art. 873. At the conclusion of the hearing and immediately before imposing the sentence, however, the trial court asked the parties if they were "ready for sentencing." Defendant's counsel responded: "Yes, your honor."
Without even addressing the issue of whether defense counsel's statement constituted implied waiver of the 24-hour delay see, State v. Clark, 35,272 (La.App. 2d Cir.12/5/01), 803 So.2d 280 (defense counsel's waiver of the 24-hour delay is sufficient), defendant does not argue that he was actually prejudiced by any failure to observe the waiting period. In State v. Brogdon, 426 So.2d 158 (La.1983), the Louisiana Supreme Court held that such a failure on the part of the trial court is harmless error where the defendant does not show actual prejudice. See also, State v. Wilson, 469 So.2d 1087 (La.App. 2d Cir.1985), writ denied, 475 So.2d 778 (La. 1985). In the instant case, any purported failure to observe the La. C. Cr. P. art. 873 delay was harmless error.

CONCLUSION
For the foregoing reasons, we affirm the defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] Harmless error analysis begins with the premise that the evidence is otherwise sufficient to sustain the conviction if viewed from the perspective of a rational factfinder and asks whether beyond a reasonable doubt the error could not have contributed to the verdict actually returned by the defendant's jury. State v. Haddad, XXXX-XXXX (La.2/29/00), 767 So.2d 682, cert. denied, 531 U.S. 1070, 121 S.Ct. 757, 148 L.Ed.2d 660 (2001). The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).