**NOT FOR PUBLICATION**

**STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT**

**12-99**

**STATE OF LOUISIANA**

**VERSUS**

**TAMESHIA TAYLOR**

**\*\*\*\*\*\*\*\*\*\***
**APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, DOCKET NOS. 15034-07
HONORABLE D. KENT SAVOIE, DISTRICT JUDGE**
**\*\*\*\*\*\*\*\*\*\***

**SYLVIA R. COOKS
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Marc T. Amy and Phyllis M. Keaty, Judges.

**AFFIRMED.**

James E. Beal
Louisiana Appellate Project
P.O. Box 307
Jonesboro, LA 71251-0307
(318) 259-2391
**ATTORNEY FOR DEFENDANT/APPELLANT**
    Tameshia Taylor

John F. Derosier, District Attorney
Karen C. McLellan, Assistant District Attorney
901 Lakeshore Drive, Suite 800
Lake Charles, LA 70601
(337) 437-3400
**ATTORNEY FOR APPELLEE**
    State of Louisiana

**COOKS, Judge.**

Defendant appeals as excessive her twenty-year sentence for committing manslaughter in violation of La.R.S. 14:31. For the following reasons, we affirm the sentence.

FACTS AND PROCEDURAL HISTORY

On June 11, 2007, an altercation began between Defendant, Tameshia Taylor, and the victim, Darrell Thomas, who were living together. The altercation ended with Defendant stabbing and fatally wounding the victim. At the guilty plea proceeding, the factual basis was set forth in the following exchange:

MR. KIMBALL:

This happened on June the 11th, 2007. The defendant and the victim, Darrell Thomas, apparently had been living together and they had been drinking and smoking narcotics earlier that night, which was confirmed by a neighbor who lived next door, Dexter Ned, -

MS. TAYLOR:

He was there in the house. He was staying there.

THE COURT:

Okay.

MR. KIMBALL:

And there was a fight and apparently this was a pretty volatile relationship, from what I'm gathering from the report, a physical fight that erupted between Tameshia Taylor and Darrell Thomas, wherein she was physically battered by the defendant, she grabbed a knife in the heat of that moment and stabbed in the chest, it was a steak knife from the house there.

THE COURT:

And he died as a result of that?

MR. KIMBALL:

That's correct, Your Honor. Both individuals were tested, obviously the victim, after he was deceased they drew his blood, he tested positive for cocaine, as well as alcohol. Mr. Ned did not get

tested, but the defendant was tested and she tested positive for cocaine, but no alcohol.

Defendant was charged by indictment with second degree murder, a violation of La.R.S. 14:30.1. She pled guilty to the amended charge of manslaughter. A sentencing hearing was held on August 12, 2009, and the trial court sentenced Defendant to twenty years with the Department of Corrections. Defendant filed a motion to reconsider sentence, which was denied by the trial court.

Defendant lodged this appeal, asserting her twenty-year sentence is excessive. Specifically, she contends the trial court failed to give sufficient consideration to mitigating factors in fashioning the sentence in this case.

## ANALYSIS

Defendant complains her sentence is excessive for a "twenty-two year old second offender, who had only a burglary on her record for which she had served two years probation." Defendant argues she did not intend to kill her boyfriend when she stabbed him with a steak knife in self-defense. In her brief to this court, Defendant states, "[t]hough she had been beaten many times, and was being beaten on the night of the tragic incident, she loved and expressed extreme remorse for the victim, whom she never intended to kill." Defendant points out, at the hearing on the motion to reconsider sentence, an expert in battered spouse syndrome, Ann Polak, testified that records from the women's shelter indicated previously the victim had choked and beaten her. Defendant argues a lesser sentence including a period of supervised release would be appropriate for this second offender.

The State responds that the trial court gave sufficient reasons for imposing the twenty-year sentence. The State argues Defendant fails to show how the sentence is constitutionally excessive and states in pertinent part:

2

Moreover, this defendant has utterly failed to establish that the sentence imposed on her was constitutionally excessive. After a three day long drug binge, the defendant and her boyfriend began arguing. According to the defendant's own statement, the victim slapped the defendant, and the defendant retaliated by stabbing the victim in the chest with a steak knife, killing him. The statute required that the defendant receive no more than 40 years, and she was sentenced to 20 years, which is half of the maximum sentence. The sentence the trial judge imposed neither shock[s] one's sense of justice, nor constitute[s] cruel, unusual, or excessive punishment. A lesser sentence would have deprecated the seriousness of the offense this defendant committed. Clearly, the trial court imposed the proper sentence for manslaughter. (Record citations omitted.)

The trial court set forth the following oral reasons for imposing Defendant's sentence:

THE COURT:

All right. The Court has considered the statement of Patti McKeiver with the Calcasieu Parish Sheriff's Office, who is a volunteer, concerning classes that Tameshia has taken, considered the pre-sentence investigation.

The defendant pled guilty to the charge of manslaughter which seems appropriate to the way it appears that this event happened. She is a second-time felony offender having previously been convicted of simple burglary.

And I take into consideration the fact that the evidence would indicate that there was drug abuse by both parties on this occasion and that there was an argument but certainly not anything, which I know of, which would be sufficient to cause her to have to pull a knife to defend herself. All I heard was arguments. I heard nothing that would indicate that there was [sic] threats or abuse toward her.

I'm going to sentence her to serve 20 years with the Department of Corrections.

The Defendant timely filed a motion to reconsider sentence asserting excessive sentence. In support of her claim, the Defendant asserted in pertinent part:

a) She has no prior criminal history and made a full confession when confronted about her activities herein. She has admitted to some responsibility for her actions due to excessive drug use that impaired her cognitive thinking, as well as giving a guilty plea on August 12, 2009.

3

b) There was a very long history of physical abuse between the defendant and the victim that did not get presented to the Court. Specifically, at the sentencing hearing, undersigned counsel attempted to offer evidence in support of the assertion that defendant had been abused by the deceased. The Court declined to allow Mr. Ron Jackson, Lead Investigator for the Public Defenders' Office, to testify in this regard purportedly for the reason that Ron Jackson's testimony was likely to present in the form of hearsay. However, the Court expressed its desire to review "documentary evidence." Defendant maintains that both documentary evidence and Ron Jackson's testimony constitute hearsay and the Court's preference for one form of hearsay over the other ultimately prejudiced the defendant.

A hearing on the motion to reconsider sentence was held on March 5, 2010 at which the Defendant testified she began dating the victim, Daryl Thomas, in 2006. She stated in 2006, she went to the Women's Shelter and spoke to Ann Polak alleging physical abuse by Michael Marshal. Defendant contended it was really Mr. Thomas, not Mr. Marshal, that abused her. Defendant acknowledged the records from the women's shelter would reflect that her abuser was Mr. Marshal.

The hearing continued on May 11, 2011, at which time Defendant called to testify Ann Polak, director of the women's shelter. Ms. Polak testified the records from the women's shelter indicated Defendant came to the shelter twice, in 2004 and 2006. In 2004 and 2006, Defendant filled out paper work for a restraining order, and the paper work reflected someone other than the victim as her abuser. The records from the shelter verified Defendant was in the shelter from July 1 to August 1, 2006. However, there was nothing in the records showing Defendant changed the name of the abuser to the victim. Ms. Polack did testify it was not unusual for a woman who had been abused to give the incorrect name for her abuser. According to Ms. Polak, battered women do not want to get the abuser in trouble, although desiring to stop the abuse.

4

Ms. Polak was of the opinion Defendant had been abused by the victim and Defendant was likely to respond affirmatively to treatment. Ms. Polak testified in pertinent part:

> A woman who can walk away has a family who can support her. She has resources where she can make her way. This woman tried repeatedly in different jobs to get a job where she could stay there and work, and it didn't work.
>
> . . . .
>
> A      Well, let me just say that there are a lot of women in abuse situations that abuse drugs. There is [sic] many who don't. I don't -- does it change the way I look at it? I think that she still has reactions to the abuse that are still within -- that are part of her whether she is doing drugs or not doing drugs.

At the May 11, 2011 hearing, the Defendant testified again. She stated the victim was hitting her, and the reason she cut him with a knife was to get the victim to stop hitting her. She stated she had no intent to kill him.

The trial court denied the motion to reconsider sentence stating in pertinent part:

> THE COURT:
>
> I would have liked to have heard some of this information as part of the presentence; but listening to Ms. Polak and the circumstances under which she has gone before about going to the facility before, why she didn't choose that option on this occasion, frankly, baffles me. I think in large part it's probably due to the smoking of the crack cocaine.
>
> . . . .
>
> I think it's in large part due to the decisions made with the crack cocaine, because she certainty [sic] had the training to do something different than what she did. I certainly don't think that anything excuses her actions. I don't think there is justification for her actions. And considering that she is a second felony offender, I thought the sentence imposed of 20 years was entirely appropriate; and I still think that after hearing all of the things that I heard today. The motion to reconsider is denied.

5

In *State v. Decuir*, 10-1112 (La.App. 3 Cir. 4/6/11), 61 So.3d 782, this court explained in pertinent part:

> The law is well settled concerning the standard to be used in reviewing excessive sentence claims:
>
> > La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
>
> *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331.
>
> . . . However, even when a sentence falls within the statutory sentencing range, it still may be unconstitutionally excessive, and in determining whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, this court has suggested that several factors may be considered:
>
> > [An] appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00); 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the

> aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La.5/30/03), 845 So.2d 1061. Still, "the trial judge need not articulate every aggravating and mitigating circumstance outlined in art. 894.1[;] the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant." *State v. Smith*, 433 So.2d 688, 698 (La.1983).

*Id*. at 790-91.

The maximum sentence that may be imposed on someone convicted of manslaughter is forty years at hard labor. La.R.S. 14:31(B). Defendant's twenty-year sentence falls within the middle of the sentencing range.

During a fight between Defendant and the victim, Defendant stabbed the victim with a knife which resulted in the victim's death. Defendant was under the influence of cocaine when the offense occurred.

In cases where there was a fight or abuse involved, this court has upheld similar sentences as the one imposed in this case. In *Decuir*, 61 So.3d 782, the defendant, who pled guilty to manslaughter, sought review of her thirty-five years at hard labor sentence. On appeal, the defendant asserted that the trial court imposed an excessive sentence "'considering the factual circumstances and history of abuse between the appellant and the victim.'" *Id*. at 790. Specifically, she asserted that she was a "forty-four-year-old mother who has supported her family through a life of abuse; that this is her first felony offense; and that the trial court failed to give adequate weight to the mitigating circumstances in this case." *Id*. This court affirmed the sentence, writing in pertinent part:

> A decision on point with the matter now before us is *State v. Russell*, 42,479 (La.App. 2 Cir. 9/26/07), 966 So.2d 154, *writ denied*, 07-2069 (La.3/7/08), 977 So.2d 897. In that case, the defendant shot his stepfather twice in the head after an argument. The argument began when the defendant confronted his stepfather about his suspicions that the stepfather had been inappropriate with one of the

defendant's children, and the defendant claimed the shooting was in self-defense because his stepfather had been approaching him with a machete at the time the defendant shot him. After the shooting, the defendant concealed his actions by burying the victim's body, by tidying the site, by burning the victim's personal effects, and by lying about his stepfather's whereabouts. The defendant was convicted of manslaughter and sentenced to forty years at hard labor.

The defendant in *Russell* asserted on appeal that his sentence was excessive. Finding that the trial court had considered the violent nature of the offense, the defendant's deliberate creation of the risk of death or great bodily harm, the use of a dangerous weapon, the permanent injury to the victim, the pattern of the bullets (two in the head with one being a contact shot), and the defendant's attempts to conceal the evidence, the second circuit affirmed the sentence imposed. Noting that the penalty for second degree murder was life imprisonment, the second circuit found no abuse of the trial court's sentencing discretion.

As in *Russell*, the trial court in the instant case clearly stated that this was a case of premeditated murder rather than manslaughter. The record supports the trial court's conclusion; it reflects a history of mutual physical abuse between the defendant and her husband, including a prior instance when the defendant shot her husband and another previous incident when the defendant attacked him in his sleep. Moreover, the record also reflects that the defendant frequently threatened to shoot her husband in the head. Additionally, by entering into the plea agreement the defendant reduced her sentencing exposure from life imprisonment to forty years. Because we conclude thirty-five years at hard labor in the instant case does not constitute an abuse of discretion and is neither shocking nor fails to make a meaningful contribution to acceptable penal goals, we reject this assignment of error.

*Id*. at 791-92 (footnote omitted).

In *State v. Batiste*, 07-482 (La.App. 3 Cir. 10/31/07), 969 So.2d 704, the defendant, convicted after a bench trial of the lesser included offense of manslaughter, was sentenced to serve twenty years at hard labor. On appeal, he argued the sentence was excessive for a thirty-three-year-old first offender who had no criminal record. This court affirmed the sentence. In the opinion, this court set forth the trial court's reason which provided as follows:

The trial court stated the following at Defendant's sentencing hearing:

8

The Court found that the defendant in this case had the last opportunity to either drive off to avoid the victim and not exit from his vehicle but instead the defendant exited his vehicle, walked around to the other side of the vehicle where the victim was and struck him in the head with one blow to the head.

The mitigating circumstances show that the victim had been taunting the defendant and had been picking at Chad to fight him the entire evening of the incident in question. The victim entered the vehicle from the passenger side with a forty (40) ounce beer in his hand and threatened to do harm to the defendant.

The medical evidence showed that the victim, Tyra Dale Hicks[,] had ingested cocaine, marijuana, alcohol and some unknown substance captioned Benzu . . . in his system at the time of his death.

*Id*. at 706.

In *State v. Clements*, 99-2005 (La.App. 3 Cir. 10/4/00), 774 So.2d 263, *writ denied*, 01-906 (La. 2/1/02), 808 So.2d 333, the defendant, convicted of manslaughter, argued her sentence of eighteen years at hard labor was excessive. In support of her assertion, the defendant argued she was forty-two years old, she had no prior felony convictions, and her use of alcohol and Ativan caused her to not recall the events leading up to and including the shooting. This court affirmed the sentence, finding it was not constitutionally excessive.

After a review of the record, we find it adequately reflects the trial court considered the mitigating and aggravating circumstances of Defendant's case and did not abuse its discretion in the sentence imposed. Therefore, Defendant's assertion that her sentence was excessive lacks merit.

**DECREE**

For the foregoing reasons, Defendant's sentence is affirmed.

**AFFIRMED.**

9